UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

SHUNG MOORE ,
                        Plaintiff,

                vs

Case Number: 17-943-DRH

☒ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. § 1983 (State Prisoner)

C/O BRACE; LT.EOAVALDI; LT. MORRIS;
LT. WELBORN; MAJ.MONJE ; C/O DUNBAR;
SGT. HARRIS; KIMBERLY BUTLER; LESLIE
MCCARTY; JOHN DOE1; MACUIRA,RN; SGT.
PELKER; DR.TROST; JOHN DOE 2; JOHN DOE 3;
GAIL WALLS; LORI OAKLEY; and DIRECTOR
BALDWIN, sued in their individual and official
capacities.
                        Defendants

SCANNED AT MENARD and E-mailed
9/1/17   by SB   64 pages
date   initials   No.

INTRODUCTION

This is a civil rights action filed by Shung Moore, a state prisoner, for money damages, declaratory and injunctive relief brought pursuant to the First and Eighth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, alleging First Amendment retaliation, denial of adequate medical care, deprivation of the minimal civilized measure of life's necessities, and deliberate indifference to the violation of constitutional rights, in violation of the First and Eighth Amendments to the United States Constitution.

I. FICTITIOUS NAME or DOE CLAUSE (1) The true names or capacities, whether individual, corporate, associate, or otherwise, and defendantship of defendants DOES 1 through ——, inclusive, are unknown at the time of the filing of this complaint to plaintiff, who therefore sues said defendants by such fictitious names and will ask leave of court to amend this complaint to show their true names or capacities and defendantship when the same have been ascertained. Plaintiff is informed and believes, and based upon such information and belief, alleges that each defendant designated herein as a DOE was responsible negligently or in some other actionable manner, for the events and happenings referred to herein that proximately caused injury to plaintiff as hereinafter alleged.

1 of 33

II    JURISDICTION

    <u>a.</u>   This Court has jurisdiction over the Plaintiffs' claims of violation of federal Constitutional rights under 42 U.S.C. § 1331 (1) and 1334.

    <u>b.</u>   At all relevant times, the Plaintiff was an inmate within the Illinois Department of Corrections.

    <u>c.</u>   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c).

    <u>d.</u>   Divisional venue is in the Southern District because the events leading to the claim arose in this district.

    <u>e.</u>   Defendant is now, and at all times herein mentioned, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, and licensed and authorized to do business in the State of Illinois, having its principal office in Chicago, and County of Cook.

III.   AGENCY CLAUSE (2) At all times herein mentioned, defendant, and each of them, was the agent, servant, and employee of each remaining defendant and was at all times herein mentioned acting within the course, scope, and authority of said agency, service, and employment

Plaintiff : SHUNG MOORE

A.
    <u>1.</u>   Plaintiff's mailing address: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259

    <u>2.</u>   Plaintiff's register number: B-12832

    <u>3.</u>   Plaintiff's present place of confinement: Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711

Defendant #1 : C/O BRACE
B.   Defendant C/O BRACE is employed as a Correctional Officer with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant C/O BRACE was employed by the state at the time the claims in this complaint arose.

Defendant #2 :  LT. EOAVALDI

C.  Defendant LT. EOAVALDI is employed as a Correctional Officer Lieutenant with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711 He is sued in his individual capacity

Defendant LT. EOAVALDI was employed by the state at the time the claims alleged in this complaint arose

Defendant #3: LT. MORRIS

D.  Defendant LT. MORRIS is employed as a Correctional Officer Lieutenant with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711 Defendant LT. MORRIS was employed by the state at the time the claims alleged in this complaint arose. He is sued in his individual capacity.

Defendant #4: LT. WELBORN.

E.  Defendant LT. WELBORN is employed as a Correctional Officer Lieutenant with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711 He is sued in his individual capacity - Defendant LT. WELBORN was employed by the state at the time the claims alleged in this complaint arose.

Defendant #5: MAJ. MONJE

F.  Defendant MAJ. MONJE is employed as a Correctional Officer Major with the Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant MAJ. MONJE was employed by the state at the time the claims alleged in this complaint arose

Defendant #6: C/O DUNBAR

G.  Defendant C/O DUNBAR is employed as a Correction Officer with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant C/O DUNBAR was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 7: SGT. HARRIS

H.    Defendant SGT. HARRIS is employed as a Correctional Officer Sergeant with the Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant SGT HARRIS was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 8: KIMBERLY BUTLER

I.    Defendant KIMBERLY BUTLER is employed as Chief Administrative Officer with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. She is sued in her individual and official capacities. Defendant KIMBERLY BUTLER was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 9: LESLIE MCCARTY

J.    Defendant LESLIE MCCARTY is an employed as Officer of the Administrative Review Board with the Administrative Review Board Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277 Defendant LESLIE MCCARTY was employed by the state at the time the claims alleged in this complaint arose. She is sued in her individual and official capacities.

Defendant # 10: JOHN DOE 1

K.    Defendant JOHN DOE 1 is employed as a Correctional Employee assigned to the Inmate Commissary or General Store, with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant JOHN DOE 1 was employed by the state at the time the claims alleged in this complaint arose

Defendant # 11: MACIURA, RN

L.    Defendant MACIURA, RN is employed as a Registered Nurse with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. She is sued in her individual and official capacities. Defendant MACIURA, RN was employed by the state at the time the claims alleged in this complaint arose

4 of 33

Defendant # 12: SGT. PELKER

M.   Defendant SGT. PELKER is employed as a Correctional Officer Sergeant with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual capacity. Defendant SGT. PELKER was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 13: DR. TROST

N.   Defendant DR. TROST is employed as the Medical Director of the Health Care Unit with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual and official capacities. Defendant DR. TROST was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 14: JOHN DOE 2

O.   Defendant JOHN DOE 2 is employed as a Doctor at the Health Care Unit with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He is sued in his individual and official capacities. Defendant JOHN DOE 2 was employed by the state at the time the claims alleged in this complaint arose

Defendant # 15: JOHN DOE 3

P.   Defendant JOHN DOE 3 is employed as a Medical Official at the Health Care Unit with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. He or she is sued in their individual and official capacities. Defendant JOHN DOE 3 was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 16: GAIL WALLS

Q.   Defendant GAIL WALLS is employed as the Health Care Unit Administrator with Menard Correctional Center, 711 Kaskaskia Street, Menard, IL 62259-0711. She is sued in her individual and official capacities. Defendant GAIL WALLS was employed by the state at the time the claims alleged in this complaint arose

Defendant # 17: LORRIE OAKLEY

R.   Defendant LORRIE OAKLEY is employed as a Grievance Officer with the Menard Correctional Center, 711 Kaskaskia Street, Menard IL 62259-0711. She is sued in her individual and official capacities. Defendant LORRIE OAKLEY was employed by the state at the time the claims alleged in this complaint arose.

Defendant # 18: DIRECTOR BALDWIN

S.   Defendant DIRECTOR BALDWIN is employed as the Director of the Illinois Department of Corrections with the Illinois Department of Corrections, 1301 Concordia Court, Springfield, IL 62794. He is sued in his individual and official capacities. Defendant DIRECTOR BALDWIN was employed by the state at the time the claims alleged in this complaint arose.

All the defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

## IV. PREVIOUS LAWSUITS

A. Have you begun any other lawsuits in state or federal court relating to
your imprisonment?                         ☑ Yes      ☐ No

B. If your answer to "A" is YES, describe each lawsuit in the space below. If
there is more than one lawsuit, you must describe the additional lawsuits
on another sheet of paper using the same outline. <u>Failure to comply with
this provision may result in summary denial of your complaint</u>.

1. Parties to previous lawsuits: *[illegible] C/O illegible*
   Plaintiff(s): SHUNG MOORE.

   Defendant(s): KIMBERLY BUTLER, RICHARD HARRIS C/O MICHAEL MONTE,
   C/O JOSEPH NEWCOMB, C/O RYAN ZIEGLER

2. Court (if federal court, name of the district; if state court, name of
   the county): USDC / SDIL

3. Docket number: Moore v. Ziegler, et al., 3:16-CV-01239-NJR-DGW

4. Name of Judge to whom case was assigned: Nancy J. Rosenstengel

5. Type of case (for example: Was it a habeas corpus or civil rights
   action?): Civil Rights Action

6. Disposition of case (for example: Was the case dismissed? Was it
   appealed? Is it still pending?): Still Pending

7. Approximate date of filing lawsuit: November 10, 2016

8. Approximate date of disposition: Jury Trial is set for 4/2/2019

7 of 33

V. GRIEVANCE PROCEDURE

A. Is there a prisoner grievance procedure in the institution? ☒ Yes ☐ No

B. Did you present the facts relating to your complaint in the grievance procedure ☒ Yes ☐ No

C. If your answer is YES,
1. What steps did you take?

(Regarding Grievance Dated June 9, 2015) Plaintiff completed all three steps of the grievance process.

Regarding Grievance Dated June 14, 2015) Plaintiff completed all three steps of the grievance process

Regarding Grievance Dated July 12, 2015) Plaintiff completed all three steps of the grievance process

2. What was the result?

(Regarding Grievance Dated June 9, 2015) Plaintiff fully complied with the regulations contained in the Illinois Department of Corrections (IDOC's) Grievance Procedures for Offenders [See, 20 Ill. Admin Code 504. 800 et. seq.], to properly exhaust his claims. Plaintiffs' appeal was denied by the Director of the IDOC, who acts through the ARB

Regarding Grievance Dated June 14, 2015 Plaintiff fully complied with the regulations Contained in the IDOC's Grievance Procedures for Offenders [See, 20 Ill. Admin. Code 504.800 et seq.], to properly exhaust his claims. Plaintiff's appeal was denied by the Director of the IDOC, who acts through the ARB

Regarding Grievance Dated July 12, 2015. Plaintiff fully complied with the regulations contained in the IDOC's Grievance Procedures for Offenders [See, 20 Ill. Admin. Code 504. 800 et seq.], to properly exhaust his claims. Plaintiff's appeal was denied by the Director of the IDOC, who acts through the ARB

D. If your answer is NO, explain why not. N/A

E. If there is no prisoner grievance procedure in the institution, did you complain to authorities? ☐ Yes ☐ No N/A

8 of 33

F. If your answer is YES,
   1. What steps did you take? ___ N/A ___
   2. What was the result? ___ N/A ___
G. If your answer is NO, explain why not: N/A
H. Attach copies of your requests for an administrative remedy and any response you received. If you cannot do so, explain why not. N/A !

## VI. STATEMENT OF CLAIM

Count 1 — The defendant violated both the First and Eighth Amendment by causing the unlawful deprivation of the plaintiff's clothing and bedding items in retaliation for the plaintiff filing a grievance against him

(1) On March 29, 2015, Plaintiff filed a grievance with Nippe, Monica A., Corr. Counselor II (Nippe), which alleged excessive force against Defendant Brace

(2) On March 31, 2015, Defendant Brace came to Plaintiff's cell N2-206 and threatened Plaintiff by saying "You don't get it Moore. You're wasting your time. See, your grievance ain't going nowhere", which Defendant Brace stated to Plaintiff after escorting Plaintiff to and from the diabetic line for Plaintiff's insulin

(3) On April 1, 2015, Plaintiff was escorted to the diabetic line for Plaintiff's insulin by Officer Barham, when Defendant Brace who was already present at the diabetic line along with Defendant Welborn, and Lt. Qualls, stated to Plaintiff mockingly "And how are you doing this morning Mr. Moore."

(4) Plaintiff did not respond to Defendant Brace's aforesaid comment.

(5) As Plaintiff was leaving the diabetic line, Defendant Brace again taunted Plaintiff by stating mockingly "Now you have yourself a nice little morning Mr. Moore," to which Plaintiff did not respond.

(6) Defendant Welborn and Lt. Qualls joined Defendant Brace in laughing, when Plaintiff did not respond to Defendant Brace's aforesaid taunt for Plaintiff to "have yourself a nice little morning Mr. Moore."

(7) On April 7, 2015, Plaintiff personally handed an exact copy of Plaintiff's aforesaid March 29, 2015 grievance against Defendant Brace to counselor Nippe, after Nippe stated to Plaintiff, that she [Nippe] had not received Plaintiff's March 29, 2015 grievance through the prisons intra-institutional mail system.

(10) Later that same day on the 3d shift, and while on a level-one lockdown — i.e., (a lockdown level or status which prohibits all inmates within the institution from leaving their cells to perform any work assignments), Plaintiff gave his properly marked and securely fastened laundry bag containing all the Plaintiffs clothing and bedding items, to Officer Grau for institutional laundering

(11) On April 8, 2015, within less than 24 hours after filing a grievance against Defendant Brace, and after being threatened by Defendant Brace for filing grievances against him [Defendant Brace] only eight days, Plaintiffs' laundry bag was not returned from the Laundry Room with everyone elses, and after several unsuccessful searches for it, was deemed lost by Defendant Hood

(12) Defendant Brace has repeatedly engaged in retaliatory harassment against Plaintiff in the past.

(13) Defendant Brace retaliated against Plaintiff for filing grievance(s) against him [Defendant Brace], by causing either directly or indirectly, the unlawful deprivation of Plaintiffs' clothing and bedding items', which were part and parcel to the minimal civilized measure of life's necessities needed by Plaintiff.

Count 2 — The defendants violated the Eighth Amendment by failing to correct the ongoing unlawful deprivation of the plaintiffs's clothing and bedding items, under Conditions, which alone or in combination, deprived him of the minimal civilized measure of life's necessities

(14) On April 18, 2015, as stated above, when laundry was passed out on 2-Gallery of N2. Plaintiff informed Defendant Hood that Plaintiffs' laundry bag had not been returned and was missing

(15) After several searches of N2 by Defendant Hood and others, Defendant Hood told Plaintiff that they were unable to locate Plaintiffs' laundry bag.

(16) Plaintiffs's cellmate, at that time, i.e., Tony Shanklin # B35662 (Shanklin), unlike Plaintiff, received his [Shanklin's] laundry bag back from the Laundry Room, but inexplicably, Shanklin's laundry bag had been forcefully ripped open, and was missing several items of clothing from it.

(17) According to Defendant Hood, there were no other reported incidents with anyone elses' laundry on 2-Gallery of N2, except with Plaintiff's laundry bag, and Shanklin's laundry bag.

(18) Later that morning on April 9, 2015, on the third shift, Plaintiff inquired of Officer Grau, to whom the Plaintiff had given his [Plaintiffs'] laundry bag on April 7, 2015 what had he [Officer Grau] done with Plaintiffs' laundry bag

(19) Officer Grau stated to Plaintiff that he [Officer Grau] had put Plaintiffs' laundry with the rest of the laundry bags off of N2-2 Gallery

(20) On April 9, 2015, Plaintiff informed various line staff officers on all three shifts that Plaintiffs' laundry bag containing all of the Plaintiffs' clothing and bedding items, had been missing since April 7, 2015, but no one seemed to care or offer to help Plaintiff

(21) On April 10, 2015, Officer Smith brought Defendant Eoavaldi to Plaintiffs' cell N2-206, in response to Plaintiff's request to be placed on hunger strike-status, which Plaintiff was doing in order to protest N2 prison officials' failure and unwillingness to remedy Plaintiffs' missing laundry.

(22) Defendant Eoavaldi was fully informed at that time by Plaintiff, and also observed and verified for himself, that besides a dirty blanket and the clothing Plaintiff was wearing—namely, (a soiled pair of boxer shorts, T-Shirt, and beige jump-suit), that Plaintiff had no other clothing or bedding items in Plaintiffs' cell.

(23) Defendant Eoavaldi instructed Officer Smith to provide Plaintiff with a Clothing (House Requisition-form (Clothing Slip) and to have Plaintiff fill it out in order to receive new clothing and bedding, and to return it to him [Defendant Eoavaldi] by Officer Smith for expedited processing.

(24) Officer Smith told the Plaintiff that he [Officer Smith] had personally given Plaintiffs' Clothing Slip to Defendant Eoavaldi, after Plaintiff had filled it out and given it to him [Officer Smith], which happened about fifteen minutes after Defendant Eoavaldi had left Plaintiffs' cell.

(25) On April 16, 2015, on the 3d shift, Plaintiff told Officers Jones and Simmons to put on protective gloves before handcuffing Plaintiff to be escorted to the diabetic line, because Plaintiffs' untreated MRSA infection had become pyogenic —i.e., (pus producing) and therefore contagious.

(26) Plaintiff was too weak to walk and had to be helped up two flights of stairs by Officers Jones and Simmons, in order to make it to the diabetic line, which Plaintiff did.

(27) While receiving insulin from Nurse Schaefer in the N2-Infirmary, Plaintiff fully advised Defendant Morris and Defendant Welborn about the ongoing deprivation of Plaintiffs' clothing and bedding items.

(28) Defendant Morris stated to Plaintiff that "Defendant Monje would be told about Plaintiffs' laundry situation, and that if he [Defendant Monje] deemed it necessary to open up Clothing and fix you up he'll do it."

(29) After Nurse Schaefer finished giving Plaintiff his insulin, she [Nurse Schaefer] noticed that the entire left side of Plaintiff's face was swollen to twice its normal size, and being familiar with Plaintiff's medical history of MRSA, ordered that Plaintiff be temporarily isolated until the "HCU could be contacted.

(30) Nurse Schaefer contacted the Health Care Unit and Nurse Hanna came to N2 to examine Plaintiff, and thereafter determined that Plaintiff was suffering from an active MRSA infection, and ordered that Plaintiff be temporarily quarantined until Plaintiff could be seen by a doctor.

(31) Defendant Morris and Defendant Welborn both witnessed Plaintiff suffering from the pain of an acute–MRSA infection, while wearing soiled, filthy clothing, and stinking from the lack of hygiene items, with which to maintain bodily cleanliness.

(32) On April 16, 2015, on the 3d shift, Plaintiff was moved from N2-206 to N2-628, and placed under quarantine by order of said nurses, due to Plaintiff's MRSA infection

(33) On April 16, 2015, on the first shift, Plaintiff informed Defendant Dunbar that Plaintiff did not have any clothing, bedding, or personal hygiene items, and that Plaintiff's cell was filthy, and asked Defendant Dunbar to help Plaintiff

(34) Plaintiff asked Defendant Dunbar for some disinfectant in order to clean the cell Plaintiff had just moved into that morning; Defendant Dunbar failed to help Plaintiff in any way after being told about the deprivation of Plaintiff's clothing, bedding, and hygiene items; and provided Plaintiff with no disinfectant.

(35) Later that day on April 16, 2015, on the second shift Plaintiff encountered Defendant Eeavaldi while being escorted to the diabetic clinic, and informed Defendant Eeavaldi that Plaintiff had not received any clothing or bedding items from the Clothing Slip; Plaintiff had given to Defendant Eeavaldi by Officer Smith

(36) Defendant Eeavaldi replied flatly to Plaintiff "Well you just gotta wait on it "

(37) On April 22, 2015 Plaintiff informed Defendant Dunbar that Plaintiff was without any clothing, bedding, or hygiene products, and Defendant Dunbar just shrugged and walked away

(38) Later that morning on April 22, 2015, on the first shift, Ms Thomas of the Mental Health Team (MHT) came to Plaintiff's cell N2-628, and Plaintiff fully advised Ms Thomas about the ongoing deprivation of Plaintiff's clothing and bedding items, hygiene products and the poor living conditions imposed by the aforesaid deprivations.

12 of 37

(39) Ms Thomas stated to Plaintiff that she [Ms. Thomas] would pass Plaintiffs' concerns along to Defendant Butler.

(40) Plaintiff repeatedly told various line staff officers daily about Plaintiffs' need for clean clothing and bedding items, including but not limited to: Officer Hoffman on [4/14/15], Officer T. Choate on April 23, 2015, and so forth, but to no avail.

(41) On April 28, 2015, Plaintiff encountered Defendant Eoavaldi sitting at the Sergeants' desk of 6-Gallery, while being escorted to the diabetic line, and again Plaintiff told Defendant Eoavaldi that Plaintiff still had not received any clothing or bedding items.

(42) Defendant Eoavaldi just shrugged and motioned for Plaintiff to keep walking in response to Plaintiff informing him [Defendant Eoavaldi] about Plaintiffs' ongoing deprivation of clothing, and bedding items.

(43) On April 29, 2015, on the first shift, Ms Thomas of the MHT, accompanied by Officer Warhausen came to Plaintiffs' cell No-628 and asked Plaintiff if he [Plaintiff] was okay.

(44) Plaintiff informed Ms. Thomas that Plaintiff had been without any clothing or bedding items since April 7, 2015, and also that Plaintiff had been arbitrarily denied commissary access to purchase hygiene products for 43 days, and was ineligible for state-issued indigent hygiene packs because Plaintiffs' trust fund account always exceeded one dollar.

(45) Ms Thomas stated to Plaintiff that she would pass along his [Plaintiffs'] concerns to Defendant Butler.

(46) On April 30, 2015, Officer King accompanied by Defendant Eoavaldi came to Plaintiffs' cell No-628, and Plaintiff informed Defendant Eoavaldi again that the Clothing Slip which Plaintiff had given to him [Defendant Eoavaldi] by Officer Smith for expedited processing, had not been received from Clothing yet.

(47) Plaintiff further informed Defendant Eoavaldi that Plaintiff was ineligible for indigent packs under prison rules, and that Plaintiff had been arbitrarily denied access to the only other means of acquiring hygiene products — i.e., through the Commissary.

(48) Plaintiff told Defendant Eoavaldi that Plaintiff had been arbitrarily denied the right to purchase needed hygiene items — that is, (soap, toothpaste, a washcloth) from the Commissary by Defendant John Doe 1, and that Plaintiff was otherwise ineligible for state-issued indigent hygiene packs due to Plaintiffs' trust fund account always exceeding one dollar.

13 of 33

(49) Plaintiff further informed Defendant Eoavaldi that Plaintiff had not been able to purchase hygiene items from the Commissary for over 44 days, and that Plaintiff desperately needed soap, toothpaste, and washcloth, clothing, and bedding items.

(50) Plaintiff then stated to Defendant Eoavaldi that Plaintiff had since suffered a MRSA infection requiring medical quarantine, and that the aforesaid infection suffered by Plaintiff had likely resulted from the combined unlawful deprivation of Plaintiffs' clothing and bedding, in insufficient and lack of hygiene items, and the failure to remedy said deprivations by N2 prison staff.

(51) Plaintiff further informed Defendant Eoavaldi that Plaintiff had been wearing the same soiled and filthy clothing since April 7, 2015, without any means to launder it and again requested Defendant Eoavaldis help.

(52) Defendant Eoavaldi stated to Plaintiff that he [Defendant Eoavaldi] would personally take another Clothing Slip to the Clothing Room and put it on their [Clothing Officials] desk.

(53) Plaintiff quickly filled out another Clothing Slip listing all of the clothing and bedding items taken by Defendant Brace, and then gave it to Defendant Eoavaldi.

(54) On May 1, 2015, Plaintiff encountered Defendant Eoavaldi at the diabetic line and informed Defendant Eoavaldi that Plaintiff still had not received anything from the Clothing Room, and that Plaintiff was still without any hygiene products.

(55) Defendant Eoavaldi asked Plaintiff whether someone had brought Plaintiff any soap and toothpaste, which Defendant Eoavaldi claimed to have ordered someone to bring to Plaintiff.

(56) Plaintiff told Defendant Eoavaldi that "no one had brought Plaintiff anything."

(57) On May 6, 2015, Defendant Dunbar accompanied by Ms Thomas of the MHT came to Plaintiffs' Cell N2-628, and Plaintiff told both Defendant Dunbar and Ms Thomas that Plaintiff had been without any clothing bedding, or personal hygiene items.

(58) On May 8, 2015, Plaintiff was escorted to the N2-Sick Call-station by Defendant Dunbar, where Plaintiff was seen by Nurse Rebecca Cowell (Cowell)

(59) Nurse Cowell, after drawing Plaintiffs' blood, asked Plaintiff whether the Plaintiff was alright.

(60) Plaintiff told Nurse Cowell that N2 prison officials had been denying him [Plaintiff] clothing and bedding items for over 30 days, and sufficient toothpaste for over 50 days.

(61) On May 12, 2015, Bramlet, Brad E., Corr Counselor II, (Bramlet) came to Plaintiffs' cell N2-628, and Plaintiff informed Bramlet that Plaintiff had been unlawfully deprived of any clothing and bedding items for 35 days, and any and/or sufficient hygiene items for 54 days.

(62) Plaintiff informed Bramlet that Plaintiff had been requesting help from N2 prison officials since April 7, 2015, but to no avail

(63) On May 13, 2015, Officer Phillips came to Plaintiffs' cell N2-206, and asked Plaintiff whether or not Plaintiff had any clothing and hygiene items "yet," to which Plaintiff answered "no."

(64) Officer Phillips told Plaintiff to fill out a Clothing Slip listing the things Plaintiff needed, and that he [Officer Phillips] would return in 10 minutes and take it to the Clothing Room for processing that day.

(65) Officer Phillips returned to Plaintiffs' cell and collected Plaintiffs' Clothing Slip about 10 minutes later

(66) Officer Phillips returned shortly thereafter, and gave Plaintiff several new clothing items; and a state-issued indigent hygiene package containing several (mini-sized) or hotel bar-sized.

(67) Defendant Eoavaldi by rank is a mid-level supervisory official, and staff member at the MCC, and was personally made aware daily, of the ongoing unlawful deprivation of the Plaintiffs' clothing, bedding, and hygiene items, and regularly observed the deteriorating health, and filthy condition of Plaintiff, caused by said deprivations, but failed to take reasonable measures to abate said unconstitutional deprivations

(68) Defendant Morris by rank is a mid-level supervisory official, and staff member at the MCC, and was personally made aware of the ongoing unlawful deprivation of the Plaintiffs clothing, bedding, and hygiene items, and daily observed the deteriorating health and filthy condition of Plaintiff caused by said deprivations, while stationed at N2 - diabetic line as a supervisory official

(69) Defendant Welborn is by rank a mid-level supervisory official, and staff member at the MCC, and was personally made aware of the ongoing unlawful deprivation of Plaintiff clothing, bedding, and hygiene items, and daily observed the deteriorating health, and filthy physical condition of Plaintiff caused by said deprivations, while stationed at the N2-diabetic line as a supervisory official

(70) Defendant Monje by rank is a mid-level supervisory official, and staff member at the MCC, and upon information and belief, was made aware of the ongoing unlawful deprivation of Plaintiffs' clothing, bedding, and hygiene items, reported to him [Defendant Monje] by Defendant Morris, and Defendant Welborn, but failed to take any action to correct said unconstitutional deprivations.

69.) Defendant Harris by rank is a mid-level supervisory official, and staff member at the MCC, and was personally made aware of the ongoing unlawful deprivation of the Plaintiff's clothing, bedding, and hygiene items, and the failure of other staff to help Plaintiff, and disregarded the excessive risk to Plaintiff's health posed by said deprivations

70.) Defendant Dunbar by rank is a line staff officer, and staff member at the MCC, and was personally made aware of the ongoing unlawful deprivation of Plaintiff's clothing, bedding, and hygiene items; and daily observed the deteriorating health, and filthy physical condition of Plaintiff, while assigned as the Plaintiff's 5-day-a-week gallery officer.

71.) Defendant Butler by rank is a high-level supervisory official, and policy-making member at the MCC, and upon information and belief, was repeatedly made aware of the ongoing unlawful deprivation of Plaintiff's clothing, bedding, and hygiene items, but failed to to correct said unconstitutional conditions

Count 3 — The defendants violated the Eighth Amendment by failing to provide hygiene items to the plaintiff, or permit the plaintiff to purchase hygiene items from the commissary, under circumstances, which alone or in combination, deprived him of the minimal civilized measure of life's necessities

72.) On March 16, 2015, Plaintiff received commissary items from the Commissary while confined in N2-006, which consisted of only personal hygiene items, pursuant to prison policy

73.) Approximately sometime in late 2014, and/or in 2015, the Warden and/or responsible prison official(s) discontinued the custom or policy of administering State-issued, free bars of green-state soap, to the inmate population of the MCC

74.) After said discontinuation of soap, the responsible prison officials implemented a new policy on soap purchased at the Inmate Commissary, which basically limited the amount of bars of soap able to be purchased per commissary Shop from 8 to 4, and also authorized for only smaller sized-bars of soap to be sold.

75.) On April 12, 2015, Plaintiff was instructed by the N2-Gallery officer to fill out a commissary and give it to the inmate porter named "White Mike"; who would collect said slips for processing by the Commissary

76.) On April 17, 2015, upon information and belief, Plaintiff was told that the MCC Computer systems had crashed and was down, and as a result thereof, that the inmate Commissary slips collected on 4/18/15 would not be processed, but rescheduled for another day

16 of 33

79.) Later, that morning on April 17, 2015, Defendant Dunbar accompanied by Officer Warhausen came to Plaintiff's cell No-628, and gave the Plaintiff and James Davey # N08243, each a State-issued indigent pack

80.) The state-issued indigent pack consisted of the following: (10) minature shampoos (intended to be used in lieu of soap), (1) minature toothpaste tube, (1) toothbrush, (1) styrofoam cup, and (1) toilet paper

81.) Plaintiff was already out of soap and toothpaste on April 16, 2015, and the aforesaid indigent hygiene pack provided by order of Defendant Butler, although helpful at the immediate time, was insufficient, and lasted Plaintiff for only one week.

82.) On April 22, 2015, Plaintiff was again without any hygiene items, namely, soap and toothpaste, and suffering from not being able to clean himself in the early morning hours, like most normal people do.

83.) On April 22, 2015, Plaintiff was very stressed out an emotionally depressed, because after just healing from an acute-MRSA-infection, Plaintiff feared that his [Plaintiff's] lack of hygiene materials, and basic clothing and bedding, would contribute to Plaintiff getting re-infected with MRSA.

84.) Plaintiff suffers from a chronic skin condition — namely, MRSA, which makes Plaintiff's immune system more susceptible to bacterial infection than normal health people.

85.) Later that morning on April 22, 2015, the [N2-Gallery]- officer instructed the Plaintiff to again give his [Plaintiff's] commissary slip to "White Mike" (the inmate porter) so that it could be processed for Commissary, which Plaintiff did.

86. On April 23, 2015, after commissary bags were passed out on a-Gallery of N2, everyone else received a bag except for Plaintiff, and Plaintiff then told Officer Sanders about his [Plaintiff's] missing bags who then told Defendant Dunbar.

87) Shortly thereafter Defendant Dunbar came to Plaintiff's cell and stated to Plaintiff that Officer Sanders had told him Defendant Dunbar about Plaintiff not getting a commissary bag.

88) Plaintiff told Defendant Dunbar, that he [Plaintiff] had not been to commissary since March 16, 2015, and that Plaintiff needed soap and toothpaste from Staff because Plaintiff was being prevented from purchasing such from the commissary

(89) Defendant Dunbar asked Plaintiff who had Plaintiff given his [Plaintiff's] Commissary slip to when the slips were collected.

(90) Plaintiff replied to Defendant Dunbar that he [Plaintiff] had given his [Plaintiff's] Commissary slip to White Mike; notwithstanding that such instruction from an officer to an inmate was contrary to IDOC's Departmental Rules and Directives. — i.e., (the collection of inmate commissary slips by inmates not assigned to General Store or Commissary workers)

(91) Defendant Dunbar stated to Plaintiff "That's where you messed up at, by giving your commissary slip to Mike.

(92) Plaintiff asked Defendant Dunbar to ask Officer Warhausen to call the Commissary and ask if Plaintiff's commissary slip can be specially processed due to it being lost; and also because the Plaintiff had not shopped in over 38 days.

(93) Officer Warhausen called the Commissary and communicated to Defendant John Doe 1 of the Commissary that Plaintiff had not shopped since April 16, 2015, and was ineligible for state-issued indigent hygiene packs due to Plaintiff's account always exceeding one dollar.

(94) Officer Warhausen further told Defendant John Doe 1 that Plaintiff also had a chronic skin condition — i.e. MRSA, which required Plaintiff's need for soap.

(95) Upon information and belief, Defendant John Doe 1 of the Commissary stated to Officer Warhausen that the Commissary was unable to process Plaintiff's slip because the Commissary was doing inventory.

(96) Plaintiff is unsure whether Defendant John Doe 1 was unable to allow Plaintiff's Commissary slip to be processed due to the Commissary conducting inventory or not; however, the aforesaid request to process Plaintiff's commissary slip was made very shortly after the Commissary had just shopped North 2, and therefore unlikely to be true.

(97) Later that day on April 23, 2025, on the 2d shift, Plaintiff informed Officer T. Choate about the ongoing unlawful deprivation of Plaintiff's clothing and bedding items, and that Plaintiff had not been to commissary in 38 days and was without any personal hygiene items.

(98) Officer T. Choate left and informed Lt. Casper about what the Plaintiff had told him [Officer T. Choate]

(99.) Within, minutes Defendant Harris came to Plaintiff's cell N2-628 and asked Plaintiff what was problem.

(100) Plaintiff reiterated and further explained to Defendant Harris that Plaintiff had been wearing the same soiled and filthy clothing since April 7, 2015, and was unable to properly maintain Plaintiff's personal hygiene due to being wrongly denied Commissary access to purchase need soap and toothpaste "For just as long, and that no one would help me [Plaintiff].

(101). Defendant Harris accused the Plaintiff of being a "whiner and complainer," and as he [Defendant Harris] walked away, he stated to Plaintiff "Go file another one of your grievances. I can't do nothing for you.

(102) On April 29, 2015, Ms. Thomas of the MHT accompanied by Officer Warhausen came to Plaintiff's cell, and Ms Thomas asked Plaintiff if he [Plaintiff] was okay

(103) Plaintiff stated to Ms Thomas that the unlawful deprivation of Plaintiff's clothing, bedding, and hygiene items was still ongoing, and gave Ms Thomas a letter to give to Defendant Trost.

(104) The aforesaid letter given to Ms. Thomas by Plaintiff to give to Defendant Trost, was a letter wherein Plaintiff sought the help of Defendant Trost for a special medical permit, in order to purchase two additional bars of soap each month from the commissary

(105) Plaintiff made constant complaints to various N2 prison officials about the need for hygiene items, and the ongoing unlawful deprivation thereof, but to no avail, however, the fact that Plaintiff was without clothing, bedding, and hygiene items was common knowledge by both inmates and staff.

Count 4 — The defendants violated the Eighth Amendment by denying or delaying access to treatment when they knew that the plaintiff was in need of urgent medical attention

(106) On April 10, 2015, Plaintiff gave a request slip to Nurse Chrissy Rayburn to submit to Sick Call while the Plaintiff was housed in [N2-206].

(107) The aforesaid request slip given to Nurse Chrissy Rayburn described Plaintiff's medical problem as being a potential MRSA — outbreak stemming from a chronic skin condition contracted while in the MCC.

(108) On April 11, 2015, Plaintiff tried to get the attention of Defendant Macuira as she [Defendant Macuira] was exiting N2-2 Gallery, followed by Officer Griffin.

(109) Defendant Macuira did not respond to Plaintiff when she [Defendant Macuira] passed by Plaintiff's cell.

(110) Officer Griffin came to Plaintiff's cell N2-206 about five minutes later, and asked Plaintiff what Plaintiff needed with Defendant Macuira.

(111) Plaintiff showed Officer Griffin the swelling on the left side of his [Plaintiff's] face, and told Officer Griffin to tell Defendant Macuira that Plaintiff needed some antibiotics because the Plaintiff's MRSA was flaring up again.

(112) Officer Griffin left and returned a few minutes later and stated that Defendant Macuira had told him [Officer Griffin] to tell Plaintiff that Plaintiff was scheduled for Sick Call on April 12, 2015.

(113) On April 12, 2015, Plaintiff was taken to Sick Call and examined by Defendant Macuira.

(114) At Sick Call Plaintiff immediately showed Defendant Macuira the large sore on the left side of the Plaintiff's face and told her Defendant Macuira that it was very painful especially if pressure was applied to it.

(115) Plaintiff stated that his MRSA - outbreaks had been ocurring at an increasingly alarming rate, with noticeably shorter time intervals between re-infection and recovery, and that Plaintiff's medical records reflected as much.

(116) Defendant Macuira examined the left side of the Plaintiff's face and the back of Plaintiff's neck without ever touching Plaintiff.

(117) Defendant Macuira stated to Plaintiff that "in her opinion" [Defendant Macuira's] "it doesn't look like MRSA to me"

(118) Plaintiff told Defendant that Plaintiff needed some antibiotics to prevent Plaintiff's MRSA - outbreak from turning into a full blown MRSA infection requiring Plaintiff to be quarantined, and also asked her [Defendant Macuira] for some pain medication and anti-bacterial ointment

(119) Defendant Macuira replied "When you see the doctor you can ask him for all that, I'm "quist" looking you over.

(120) After Plaintiff was taken back to his [Plaintiff's] cell Plaintiff laid down on his bunk and felt very upset and frustrated, because it seemed like Defendant Macuira did not take Plaintiff's aforesaid medical problem serious, and denied Plaintiff any care.

(121) The sore on Plaintiff's face felt like it was burning from within, and whenever Plaintiff tried to touch it to alleviate the pain, it would shoot mind-numbing pain throughout the entire left side of Plaintiff's face.

(122). Plaintiff could barely talk, eat, wash his face, or do anything without experiencing extreme pain throughout the whole left side of Plaintiff's face.

(123) Later that evening on April 12, 2015, when the nurse did med-pass on 2 Gallery of N8, Plaintiff stopped her [the nurse] and asked her did she [the nurse] have any antibiotics for the Plaintiff, or a doctors' call-line pass.

(124) The aforesaid nurse stated, to the Plaintiff that she did not have any antibiotics for Plaintiff or a doctor's call/line pass

(125) On April 13, 2015, Plaintiff woke up and realized that the whole left side of his [Plaintiffs'] face had swollen to twice its normal size, and was extremely painful

(126). Plaintiff received neither any medication nor was seen by any medical staff that day — i.e., April 13, 2015.

(127) Defendant Maeuira knew, or should have known that without-antibiotics, Plaintiff would run the risk of a full blown MRST infection requiring medical quarantine.

(128). On April 14, 2015, Plaintiff stopped Defendant Hood while he [Defendant Hood] was doing his 7:00 a.m. count-check, and told him [Defendant Hood] that Plaintiff needed emergency medical treatment.

(129) Plaintiff then showed Defendant the whole left side of Plaintiffs' face, which was so swollen it was tight to the touch, and Plaintiffs' left eye was partially shut because of the fluid build-up around it.

(130) Defendant Hood told Plaintiff that Plaintiff had a doctors' call-line pass "scheduled" for that morning — i.e., April 14, 2015.

(131) Plaintiff began asking Defendant Hood why Plaintiff had not been called out to Sick Call for his [Plaintiffs'] doctors' call-line pass, after noticing it was already one o'clock in the afternoon, and getting later.

(132) Plaintiff began kicking on his [Plaintiff's] cell door in order to protest the seemingly refusal of NJ prison officials, and medical staff, to treat Plaintiff's MRSA infection, but was too weak to kick it long enough to do much.

(133) Defendant Hood came to the Plaintiff's cell about twenty minutes after Plaintiff had started weakly kicking his door protesting the denial of medical treatment by the Defendant responsible for it.

(134) Defendant Hood told Plaintiff that Sick Call had cancelled Plaintiff's doctor's call-line, and that there was nothing he [Defendant Hood] could do about it.

(135) Plaintiff screamed at Defendant Hood and asked Defendant Hood to please go get Plaintiff somebody who could help Plaintiff, if he [Defendant Hood] was unable to do so.

(136) Defendant returned to Plaintiff's cell about ten minutes later and informed Plaintiff that he [Defendant Hood] had told Defendant Pelker about my [Plaintiff's] medical situation, and request for medical treatment, and that there was nothing else he [Defendant Hood] could

(137) Defendant Hood left for the day, and Defendant Pelker never came to see me [Plaintiff] talk to me, or offer me [Plaintiff] any help.

(138) The pain of being seemingly systematically denied medical treatment, coupled with Plaintiff's' physical pain, gave rise to psychological anguish, and the Plaintiff's' fear of losing his [Plaintiff's] left eye, or regular vision, due to the untreated MRSA - infection fluid building up around it.

(139) Later that night Plaintiff experienced insomnia due to the physical and emotional pain resulting from Plaintiff's worsening MRSA-infection.

(140) On April 15, 2015, again, Plaintiff stopped Defendant Hood at 7:00 a.m. Count-check, and requested emergency medical attention, after showing Defendant Hood how much Plaintiff's medical condition had continued to worsen overnight, and was unbearable

(141) Defendant Hood informed Plaintiff that the Plaintiff had another doctor's call-line pass scheduled for that day — i.e., April 15, 2015.

(142) Defendant Hood then stated "Hopefully they'll get to you today because I can see somethings wrong."

(143) Shortly thereafter, Defendant Hood returned to Plaintiffs' cell N2-206 and told the Plaintiff that his [Plaintiffs'] doctor's call-line pass had been cancelled again.

(144) At that point, roughly five days after the onset of Plaintiffs' MRSA-infection — the Plaintiffs' physical weakness, feeling sick, nausea, pains in Plaintiffs' face and neck — and their pains, emotional anxiety and distress — overwhelmed the Plaintiff.

(145) Plaintiff asked Defendant Hood to find out whether his [Defendant Hood's] supervisor would authorize Defendant Hood to take Plaintiff directly to the HCU.

(146). Defendant Hood left and returned to Plaintiffs' cell after about ten minutes later, and told Plaintiff that he [Defendant Hood] had spoken with Defendant Pelker about Plaintiffs' medical situation — after which, "strangely," Defendant Hood asked Plaintiff, "Have you pissed anybody off lately?"

(147) Plaintiff asked Defendant Hood what he [Defendant Hood] meant by asking the Plaintiff "had the Plaintiff pissed off anybody lately?"

(148) Defendant Hood replied " I just don't understand what's going on," and then stated "it's obvious you need medical treatment."

(149) Defendant Hood then stated to Plaintiff that his [Defendant Hood's] hands were tied because he [Defendant Hood] couldn't go over his [Defendant Hood's] supervisor's head, tacitly implying that Defendant Pelker, and possibly others, were intentionally and knowingly denying Plaintiff adequate medical care.

(150) Later that day on April 15, 2015, on the second shift, Plaintiff informed Officer Easton, that Plaintiff was too weak to go up two flights of stairs to get his [Plaintiffs'] insulin, in response to Officer Easton asking if Plaintiff was going to the diabetic line

(151) Plaintiff also told Officer Easton that Plaintiff needed emergency medical treatment as was obvious from Plaintiffs' swollen face, nearly shut left eye, as Plaintiff spoke to Office Easton

(152) Officer Easton stated to Plaintiff that he [Officer Easton] would let his [Officer Easton's] supervisor, Defendant Ecavalli, know about Plaintiffs' medical situation.

(153) Officer Easton returned to Plaintiff's cell N2-206 later and told Plaintiff that [Defendant Ecavaldi had been told, by him [Officer Easton] about Plaintiffs' medical situation

(154). Defendant Eovaldi never came to talk to, or see about Plaintiffs medical situation, and by extension thereof, health and well-being.

(155) Count 2 — The defendants violated the Eighth Amendment by failing to correct the ongoing unlawful deprivation of the plaintiffs clothing and bedding items, under conditions, which alone or in combination, deprived him of the civilized measure of lifes necessities. Count 4 — The defendants violated the Eighth Amendment by denying or delaying access to treatment when they knew that the plaintiff was in urgent need of medical attention; Plaintiff incorporates herein by reference all of the allegations contained in Paragraphs 25 – 31, of his Second Cause of Action (Count 2) as though the same were fully set forth herein.

(156) Nurse Hanna asked the Plaintiff why the Plaintiff was not taking the antibiotics prescribed by the doctor for his [Plaintiffs] MRSA infection, prior to the Plaintiff being taken to N2-628 for quarantine.

(157) Plaintiff told Nurse Hanna that no one had given the Plaintiff any medication, including antibiotics, since requesting medical treatment of every officer on every shift in N2.

(158) Nurse Hanna told Plaintiff that his [Plaintiffs] "medical chart" showed Defendant Macuira had made two entries in it, stating that Plaintiff had received his [Plaintiffs] antibiotic medication, and that Plaintiff had also refused a doctors' call-line pass by going to yard instead of to said call-line pass.

(159) Defendant Macuira made two false entries into Plaintiffs' medical chart for reasons unknown to Plaintiff, because the Plaintiff never received any antibiotics, and suffered serious physical injury and pain as a result of Defendant Macuiras conduct.

(160) Nurses Hanna and Schaefer gave Plaintiff some antibiotics and analgesics to treat Plaintiffs MRSA-infection, including pain pills for Plaintiffs' physical

(161) On April 16, 2015, on the first shift, Plaintiff was escorted to the HCU and examined by Defendant Trost, who took a "blood culture" from the infected area of Plaintiffs face, which was done to have said blood culture tested to determine if it was MRSA.

(162) The aforesaid examination performed by Defendant Trost was done in the Emergency Room of the HCU, where Defendant Trost was assisted by Nurse Linda Foutch.

(162) Defendant Trost instructed Nurse Foutch to clean the affected area of Plaintiff's face, after which, a straight razor was used by Foutch to clean the facial hair from around the MRSA wound on Plaintiff's face.

(163) Defendant Trost attempted to use light humor to make Plaintiff think that what happened to the Plaintiff, happens all the time by saying "Now you'll heal fast, notwithstanding Plaintiff's face was grosly swollen, and Plaintiff's left eye was completely closed.

(164) Defendant Trost, upon information and belief, is an employee of the Defendant Corporate Entity, and is also a high-level supervisory official of the HCU at the MCC, as the Medical Director.

(165) Defendant Trost, after learning knowledge of Plaintiff's serious medical needs, and being aware of Plaintiff's medical history with MRSA, took a gratuitous four-day delay in treating Plaintiff's injury, for non-medical reasons, thereby exacerbating Plaintiff's pain and suffering, in violation of the Eighth Amendment.

(166) Defendant Macuira failed to provide adequate medical care to the Plaintiff, when after examining the Plaintiff, and observing Plaintiff's pain and suffering, including Plaintiff's plea for pain medication, denied Plaintiff any care with deliberate indifference

(167) Defendant Heed had a duty to get medical care for Plaintiff, who was obviously sick, and being denied medical treatment by Defendant Macuira, Defendant Pelker, and others, in violation of Plaintiff's constitutional rights.

(168) Defendant Pelker by rank is a mid-level supervisory official and staff member at MCC, and had a duty to inquire into Plaintiff's health and safety, after learning knowledge of Plaintiff's serious medical needs, but with reckless disregard to an excessive risk to Plaintiff's health, failed to act

(169) Defendant Eoavaldi by rank is a said-level supervisory official, and staff member at MCC, and had a duty to inquire into the Plaintiff's health and safety, after learning knowledge of Plaintiff's serious medical needs, but with disregard to an excessive risk to Plaintiff's health, failed to act

(171) Defendant John Doe 2 is the doctor that Defendant Macuira spoke with about the Plaintiffs' need for antibiotics to treat the Plaintiff's MRSA-condition, but who failed to order these antibiotics, in violation of Plaintiffs' right to adequate medical care.

(172) Defendant John Doe 2 is the doctor who had scheduled doctor's call-line passes with the Plaintiff, but who cancelled them or they were cancelled by someone else, but nonetheless deprived Plaintiff of adequate medical care.

(173) Defendant John Doe 3 is the medical official who made two entries into Plaintiffs' medical chart stating that Plaintiff had received his [Plaintiffs'] antibiotic medication, and that Plaintiff went to yard instead of going to an alleged 4/13/15 to see Defendant Trost or John Doe 2.

(174) Defendant John Doe 3 was deliberately indifferent to Plaintiff's serious medical need for antibiotics, and demonstrated such, by falsifying Plaintiff's medical chart and/or record to reflect treatment neve received, resulting in physical re-injury, and was the unnecessary wanton infliction of pain.

175 Prior thereto, On June 15, 2015 the Plaintiff received a response to his Plaintiffs' administrative grievance filed with Bramlet.

(176) The aforesaid grievance was attached to a HCU Memorandum from Defendant Walls, which stated in pertinent part, although incorrectly, that on 4/13/15 the Plaintiff went to yard while in N2-206.

(177) The HCU Memorandum (memorandum) from Defendant Walls implied that the reason the Plaintiff's MRSA-infection and later medical quarantine happened, was somehow the fault of Plaintiff for allegedly going to yard while in N2-206.

(178) The aforesaid memorandum by Defendant Walls is dated "JUNE 10, 2015," and states therein: "I have received your letter and offer the following:"

(179) However, the letter referenced to by Defendant Walls in her [Defendant Walls] memorandum of JUNE 10, 2015, was not submitted to Defendant Oakley by the Plaintiff. UNTIL JUNE 15, 2015, and thus Defendant Walls responce to Plaintiff's grievance was evidence of deliberate indifference to Plaintiff's right to adequate medical care.

26 of 33

(180) Defendant Walls was deliberately indifferent for her failure to "truthfully" and "professionally" inquire into the essential facts of Plaintiff's medical care complaint about Defendant Maceura, as was necessary, to make an informed judgment of the level of medical care provided to Plaintiff by Defendant Maceura.

(181) Defendant Walls; upon information and belief, is an employee of Defendant Corporate Entity Wexford, and is also a high-level supervisory official of the HCU at the MCC, as the Health Care Unit Administrator.

(182) The memorandum by Defendant Walls impliedly concluded, that the medical care received by Plaintiff was timely and appropriate, and was commensurate with community standards under the policy or custom and practice of the HCU of the MCC.

(183) Defendant Walls' memorandum impliedly approved of the overall medical treatment provided to Plaintiff as said memorandum was in response to Plaintiff's grievance and is by extension thereof, a representation of an official policy of inaction, which thus amounts to a failure to protect the Plaintiff's constitutional rights under the Eighth Amendment

Count 5 — The defendant corporate entity violated the Eighth Amendment by maintaining an unconstitutional policy or custom of not having a sufficient staff of doctors available at the MCC, in order to permit [said] doctors to carry out their professional responsibilities to provide adequate medical care, in the form of keeping scheduled medical appointments, wherein physical examinations of sick prisoners are required to be performed by doctors

(184) Defendant Wexford, upon information and belief, is the private corporation which employs Defendant Trost and Defendant Walls, who are among the defendants liable for violating Plaintiff's constitutional rights

(185) Defendant Wexford maintained an unconstitutional policy or custom of not having a sufficient staff of doctors available at the MCC, in order to permit [said] doctors to carry out their professional responsibilities to make adequate medical care available, in the form of keeping scheduled doctor appointments, wherein physical examinations of sick prisoner are required to be performed by doctors.

(186.) Defendant Trost and/or Defendant John Doe 2 knowingly waited four days to examine the Plaintiff who was referred to their care for urgent medical attention by Defendant Macuiry, those repeated delays caused by said Defendant's cancelled doctor's call-line passes for non-medical reasons, constituted an unconstitutional policy or custom of deliberate indifference to the Plaintiff's serious medical needs.

(187.) Count 4 — The defendants violated the Eighth Amendment by denying or delaying access to treatment when they knew that the Plaintiff was in need of urgent medical attention. Count 5 — The defendant corporate entity violated the Eighth Amendment by maintaining an unconstitutional custom or policy of not having a sufficient staff of doctors available at the MCC, in order to permit said doctors to carry out their professional responsibilities to provide adequate medical care, in the form of keeping scheduled medical appointments, wherein physical examination of sick prisoners are required to be performed by doctors; Plaintiff incorporates herein by reference all of the allegations contained in Paragraphs 162-166, and 173-183 of its Fourth Cause of Action (Count 4) as though the same were fully set forth herein.

188. On June 9, 2015, Plaintiff filed a grievance with Bramlet, Brad E., Corr. Counselor II (Bramlet), a copy of which is attached hereto as Exhibit "A" and made a part hereof by reference as though fully set forth herein.

189. Bramlet returned Plaintiff's aforesaid grievance annexed to a HCU Memorandum ("memorandum") from Defendant Walls, dated June 10, 2015, a copy of which is attached hereto as Exhibit "B," and made a part hereof by reference as though fully set forth herein.

190. Plaintiff submitted both the aforesaid grievance and memorandum along with a letter dated June 15, 2015, a copy of which is attached hereto as Exhibit "C", and made a part hereof by reference as though fully set forth herein, to the Grievance Officer.

191. Plaintiffs' aforesaid letter was submitted to the Grievance Office in response to Defendant Walls' memorandum, as an informal rebuttal to it, and also raised serious credibility questions about its truthfulness.

192. On August 6, 2015, Defendant Oakley reviewed Plaintiffs' aforesaid grievance, memorandum, and letter, and thereafter denied Plaintiffs' grievance in her Grievance Officers' Report, a copy of which is attached hereto as Exhibit "D" and made a part hereof by reference as though fully set forth herein.

193. Defendant Oakley did not conduct any investigation into Plaintiffs' highly detailed factual assertions, or consider the letter offered to the Grievance Officer by Plaintiff, which asserted clear, non-ambiguous claims, that Plaintiffs' right to adequate medical care had been repeatedly violated by said defendants;

194. Defendant Butler concurred with Defendant Oakley's denial of the Plaintiffs' grievance dated June 9, 2015, which complained about the medical care provided for Plaintiff's aforesaid MRSA-infection or condition.

195. Defendant Butler by rank is a high-level supervisory official, and policy-making member at the MCC, and had a duty to ensure that the Plaintiff received adequate medical care, and also to correct Constitutional violations made aware of even if those violations have already happened so as to prevent said violations from happening again to Plaintiff and others.

196. Defendant Butler failed to correct the unconstitutional conduct complained of by Plaintiff in his [Plaintiffs'] highly detailed grievance and letter submitted to Defendant Oakley, which Defendant Butler had a duty to review and consider, but denied said grievance, in violation of Plaintiffs' rights.

197. Plaintiff timely filed an appeal of said grievance to Defendant Baldwin of the Illinois Department of Correction (IDOC) and Defendant McCarty of the Administration Review Board (ARB), which included said memorandum, letter, and a letter addressed to the ARB, dated September 3, 2015, a copy of which is attached hereto as Exhibit "E" and made a part hereof by reference as though fully set forth herein.

29 of 33

198. The letter which Plaintiff submitted to Defendant Baldwin and Defendant McCarty provided incontrovertible evidence that the memorandum issued to Plaintiff by Defendant Walls was patently false, which was issued in response to Plaintiff's grievance of June 9, 2015, and if only investigated by Def Defendant Baldwin and Defendant McCarty, such could have been ascertained.

199 Defendant Baldwin and Defendant McCarty co concluded that, qoute "this office finds the issue was appropriately addressed by the facility Administration") end qoute, in its disposition paper to Plaintiff, dated February 23, 2016, a copy of which is attached hereto as Exhibit "E" and made a part hereof by reference as though fully set forth herein.

200. The aforesaid "disposition paper" stated that the issue being appealed by Plaintiff was qoute "Medical failed to get treatment timely by doctor," end qoute.

201. As high level supervisory officials, Defendant Baldwin and Defendant McCarty are liable for the actions of their subordinates, based on their systematic refusal to take any reasonable action to correct the widespread breakdown in the provision of adequate medical care at the MCC, appealed by Plaintiff.

202. Defendant Baldwin and Defendant McCarty, are both liable for their conduct of engaging in a pattern of disregarding the excessive risk to inmates' health, including Plaintiff's, caused by the foreseeable consequences of their indiscriminate rubberstamping of the denial of meritorious inmate appeals, such as Plaintiff's, with deliberate indifference or willful blindness.

203. The denial of Plaintiff's appeals aforesaid appeals by Defendant Baldwin and Defendant McCarty, which ignored incontrovertible evidence that certain defendants named herein, and were acting contrary to prison policy or regulations, which cumulatively resulted in the violation of Plaintiff's rights, which were already over and unable to be prevented; but nonetheless, constituted deliberate indifference for the failure to ensure that said violations were investigated so as to prevent them from being repeated by the same undisciplined defendants.

204. Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

## VII. CLAIMS FOR RELIEF

### A. Retaliation

(205) Defendant Brace retaliated against Plaintiff by causing either directly or indirectly the ongoing unlawful deprivation of Plaintiff's clothing and bedding items in retaliation for Plaintiff filing grievances against him in violation of the First Amendment.

### B. Deliberate Indifference to Unconstitutional Conditions of Confinement

(206) Defendants Eoavldi, Morris, Welborn, Monge Harris, Dunbar, Hood, and Butler violated the Eighth Amendment by failing to correct the ongoing unlawful deprivation of Plaintiff's clothing and bedding items, under conditions, which alone or in combination, denied Plaintiff of the minimal civilized measure of life's necessities, in violation of the Eighth Amendment.

### C. Deliberate Indifference to Unconstitutional Conditions of Confinement

(207) Defendants Eoavaldi, Morris, Welborn, Monge, Dunbar, and Butler violated the Eighth Amendment by failing to provide Plaintiff with hygiene items, or permit Plaintiff to buy hygiene items from the inmate commissary under circumstances, which alone or in combination, deprived Plaintiff of the minimal civilized measure of life's necessities, in violation of the Eighth Amendment.

### D. Deliberate Indifference to Medical Care

(208) Defendants Macuira, Hood, Pelker, Eoavaldi, Morris, Welborn, John Doe 2, John Doe 3, Butler, and Trost violated the Eighth Amendment by denying or delaying access to treatment when the Plaintiff was in need of obvious urgent medical attention, in violation of the Eighth Amendment.

(209) Defendants Macuira, Hood, and Trost violated the Eighth Amendment by denying the Plaintiff timely adequate medical care by refusing to timely treat Plaintiff's serious medical needs for nonmedical reasons.

(210) Defendant Wexford violated the Eighth Amendment by maintaining an unconstitutional custom or policy of not having a sufficient staff of doctors available at the MCC, in order to permit said doctors

to carry out their professional responsibilities to make adequate medical care available, in the form of keeping scheduled medical appointments, wherein physical examinations are required to be performed by doctors, as Plaintiff needed, but was denied by Defendant Wexford, Defendant Trost, and Defendant Macuira.

G. Deliberate Indifference to Violation of Constitutional Rights by Grievance Officials

21. The knowing acquiescene in the unconstitutional behavior of subordinates persistently violating their statutory duty to inquire about such behavior and to be responsible for preventing it, failure to train or supervise, once official acquiescence in the continued existence of prison conditions which, themselves I are so injurious to prisoners that they amount to a constitutional violation. was committed by Defendants Baldwin and McCarty by denying Plaintiff's Severally meritorious grievance appeals mentioned herein

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 1, 2017

Shung Moore 512832
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 1000
Menard, IL 62259

32 of 33

## V.   REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

*The full relief to which Plaintiff is entitled by law.*

## VI.   JURY DEMAND (*check one box below*)

The plaintiff. ☑ does  ☐ does not request a trial by jury.

### DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: *August 31, 2017*
(date)

_____ Signature of Plaintiff

*P.O. Box 1000*
Street Address

*Shunn Moore*
Printed Name

*Menard, IL 62259*
City, State, Zip

*R-12832*
Prisoner Register Number

_____
Signature of Attorney (if any)

*33 of 33*

Exhibit "A" West 2-71
includes front and back

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| | | |
|---|---|---|
| Date: June 9, 2015 | Offender: (Please Print) Shuny Moore | ID#: B-12332 |
| Present Facility: MCC | | Facility where grievance issue occurred: Menard Correctional Center 02-6-15 |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☑ Other (specify): 8th and 14th Amdt. Violations
- ☐ Disciplinary Report: ___/___/___ Date of Report ______ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
- Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
- Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
- Chief Administrative Officer, only if EMERGENCY grievance.
- Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** (Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) ("A delay in the provision of medical treatment for painful conditions
– even non-life-threatening conditions – can support a deliberate-indifference claim so long as the medical condition is 'sufficiently serious or painful.'")
When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must show that the delay resulted in substantial
harm." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). Accordingly – the Menard Correctional Center (MCC) is hereby placed on notice
of its continued the violation of my Eighth and Fourteenth Amendment Rights of the United States Constitution – as well as Article I and Section
2 of the Illinois Constitution. U.S. Const. Amends. 8, 14; Ill. Const. 1970, art. I, § 2. To wit: (1) that Nurse Marciura failed to provide adequate
medical treatment to me when I first arrived at Sick Call; (2) that Nurse Marciura failed to alleviate my pain and suffering; (3) that Nurse
Marciura failed to fulfill her gatekeeper role by waiting unnecessarily long before calling the prison doctor; (4) that Nurse Marciura's acts or
omissions were sufficiently harmful to evidence deliberate indifference to serious medical needs; (5) that Nurse Marciura "knew" I required
prompt medical attention and this delay would exacerbate my health problem.

**Relief Requested:** Compensatory and punitive damages.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

[signature] Offender's Signature B-12332 ID# 06/09/15 Date

(Continue on reverse side if necessary)

RECEIVED
JUN 22 2015

## Counselor's Response (if applicable)

Date Received: 6/11/15 ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: See attached HCU response

Brad Bramlet [signature] 6/11/15
Print Counselor's Name Counselor's Signature Date of Response

RECEIVED
SEP 08 2015
ADMINISTRATIVE REVIEW BOARD

## EMERGENCY REVIEW

Date Received: ___/___/___ Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature ___/___/___ Date

Distribution: Master File; Offender Page 1 DOC 0046 (Rev. 3/2005)

my medical chart – i.e., that I had received my antibiotic medication on Apr. 13, 2015 – and that I refused a doctor's appointment related to my MRSA outbreak – medical problem; – and as such – was sufficient to satisfy the subjective component of the deliberate indifference standard under the Eighth Amendment; and (B) that the delay in medical care resulted in "substantial harm and that substantial harm was the ultimate physical injury caused by my illness, inasmuch as a mere timely course of medical treatment would have minimized or prevented the harm, and, that the substantial harm was also an intermediate injury, such as by the pain I experienced while waiting for treatment and analgesics." Background - On Apr 10, 2015 - I went a request slip to Nurse Chrissy Rayburn to submit to Sick Call for me - it furnished my medical problem as being a potential MRSA outbreak stemming from a chronic MRSA condition contracted while in the MCC. On Apr. 11, 2015 - I tried to stop Nurse Maciura who was being escorted by Ofc. Griffin - to speak me yelling after her to stop - Nurse Maciura kept on going and left the gallery. Ofc. Griffin returned about five minutes later and asked me what I needed with the nurse. I showed Ofc. Griffin the swelling on the left side of my face, and told him to tell Nurse Maciura that I needed some antibiotics because my MRSA was flaring up again. Ofc. Griffin left and returned and told me that Nurse Maciura said that I was scheduled for Sick Call the next day. On Apr. 12, 2015 I was taken to Sick Call for an examination by Nurse Maciura. I immediately showed Nurse Maciura the large sore on the left side of my face and told her that it was very painful - especially if any pressure was put on it. I also showed Nurse Maciura the nape of my neck- right below my hairline - where a small outcropping of MRSA-related bumps had sprung up. I told Nurse Maciura that my MRSA outbreaks had been occurring at an increasingly alarming rate with noticeably shorter time intervals between re-infection and recovery - and that my medical records reflected as much. Nurse Maciura examined the left-side of my face and the back of my neck without ever touching me and then stated that in her opinion "It doesn't look like MRSA to me." I told Nurse Maciura that I needed some antibiotics to prevent my MRSA outbreak from turning into a full-blown infection requiring me to be quarantined - and also asked her for some pain medication, and anti-bacterial ointment - Nurse Maciura replied " When you see the doctor you can ask him for all of that, I'm just looking you over," and then had me sent back to the cell. After I was taken back to my cell - I laid down on my bed and felt very upset and frustrated because it seemed like the nurse didn't take my medical problem serious; and that she badgeled me any kind of pain medication, and that she had refused to call the doctor and let him know how bad my MRSA condition actually was. The sore on my face felt like it was burning from within and whenever I tried to touch it- to alleviate the pain it would just shoot sharp mind- numbing pain throughout that whole area. I could hardly talk- eat, wash my face, or do anything without experiencing extreme pain throughout the entire left side of my face. From there, my condition began to rapidly deteriorate. On Apr 13, 2015 - later that evening when the nurse delivered-pass had I asked her did she have any antibiotics for me and she said no I felt dizzy mentally anguish and despondent because present another night of pain and misery. On Apr. 15, 2015 - I neither received any medication nor was seen by any medical personnel - eventhough Nurse Maciura knew- or should have known that without antibiotics for my MRSA outbreak that I would run the risk of infection resulting in me being quarantined. On Apr. 14, 2015 - the count- that I told Ofc. Head I needed emergency medical treatment because the whole left-side of my face was swollen to twice its normal size and my eye was partially shut from the fluid- buildup. Ofc. Head told me that I had a doctor's pass so I waited on that, however - it was canceled. I began to bang on my door in protest but was kept from my infection to do much. On Apr. 15,2015 - I begged Ofc. Head to take me to get some medical treatment because my condition had worsened and was unbearable. Ofc. Head told me that I had another doctor's pass - however - it was canceled again. On Apr. 16, 2015 - I discovered my stomach strength and got up for dialysis line - I still both Ofc. Simmons and Ofc. Jones to put an antidote a bus because my wound was protruding pus and I know I was both now infected and contagious. At the infirmary Nurse Schuler saw my face and called the HCU and Nurse Penn Huang came from the HCU to examine me while I was in the bullpen where Nurse Schuler had both the guard to separate me at until they decided what to do with Nurse Huan asked me why I wasn't taken my antibiotics. I told her that nobody gave me any and that I had been begging every officer on all three shifts to help me get treatment but nobody would do anything. Nurse Huan stated that my medical chart showed that Nurse Maciura had tried to administer the -I had received my antibiotic medication and had refused a doctors appointment because I went to Ward- ( both false ). I was quarantined and given antibiotics, antibacterial ointment, bandages, a biohazard bag and pain medication by both Nurses Huang and Schuler. Nurse Maciura violated my Eighth Amendment right not to be subjected to cruel and unusual punishment and to adequate medical care.

Grievance Ended

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000058

*Exhibit B*



**Illinois
Department of
Corrections**

**Bruce Rauner**
Governor

**Donald Stolworthy**
Director

Menard Correctional Center
711 Kaskaskia Street
Menard, IL 62259

Telephone: (618) 826-5071
TDD: (800) 526-0844

## MEMORANDUM

DATE: June 10, 2015

TO: Shung Moore
    B12832

FROM: Gail Walls, RN
      Health Care Unit Administrator

SUBJECT: Grievance dated 6/9/15 received 6/10/15

I have reviewed your letter and offer the following:

You have a concern of Nurse Maciura not taking care of your medical needs. She saw you on nurse sick call. She spoke with the doctor and got an order for antibiotics. Those antibiotics were signed out of stock for you. On 4/13/15, the next day, you were to be seen by the doctor. You went to yard instead. Please keep all scheduled appointments. Your issue was addressed.

Gail Walls, RN
Health Care Unit Administrator

CC: File

RECEIVED

SEP 0 8 2015

ADMINISTRATIVE
REVIEW BOARD

RECEIVED

JUN 2 2 2015

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000055

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000056

**Bruce Rauner**
Governor

**Illinois**
**Department of**
**Corrections**

**Donald Stolworthy**
Director

Menard Correctional Center
711 Kaskaskia Street
Menard, IL 62259

Telephone: (618) 826-5071
TDD: (800) 526-0844

## MEMORANDUM

DATE:  June 10, 2015

TO:  Shung Moore
B12832

FROM:  Gail Walls, RN
Health Care Unit Administrator

SUBJECT: Grievance  dated 6/9/15 received 6/10/15

I have reviewed your letter and offer the following:

You have a concern of Nurse Maciura not taking care of your medical needs. She saw you on nurse sick call. She spoke with the doctor and got an order for antibiotics. These antibiotics were signed out of stock for you. On 4/13/15, the next day, you were to be seen by the doctor. You went to yard instead. Please keep all scheduled appointments. Your issue was addressed.

_____
Gail Walls, RN
Health Care Unit Administrator

CC: File

RECEIVED

SEP 08 2015

ADMINISTRATIVE
REVIEW BOARD

Copy of ~~XXXXXXXX~~ Inmate Supplemental Rebuttal Reply Submitted to the Grievance Office   1 of 2   *Exhibit C*
*Includes front and back*

Date: June 15, 2015

RECEIVED

SEP 08 2015

ADMINISTRATIVE
REVIEW BOARD

To: Grievance Office

From: B-12832 Moore, Shung
       W-217

Re: Inmate's Supplemental Rebuttal Reply to Health Care Unit (HCU) Memorandum
    Attached to Grievance Dated June 9, 2015

This letter is submitted as ["other pertinent information"] pursuant to Administrative Directive (AD) 04.01.114 G.1.b., to help clarify and attempt to fairly resolve the issue(s) being grieved. The HCU Memorandum ("Memorandum") provided by Gail Walls, RN, HCU Administrator ("Administrator") fails to address the following unresolved issue(s): (1) if antibiotics were ~~signed~~ out of stock for me [who] delivered them to me and [when], ~~and~~ (2) but if these antibiotics were not delivered as alleged, [who] falsified my medical chart to reflect that those antibiotics had been received, and [when].

Furthermore, on 4/13/15 it is alleged that I was scheduled to be seen by the doctor and missed that doctor's appointment due to going to the yard. If that proves to be true then the content of the Unit Log for yard between 8:AM and 1:45 P.M. on the date of 4/13/15 for Northill Seg — specifically cell 206 — Shung Moore B-12832 — should reflect as much. However, absent such information and/or documentary evidence to the same, it would appear that a false entry was made in my medical chart regarding an allegedly missed doctor's appointment for my MRSA condition, and that [presumably] the individual who made it was Nurse Maciura.

Moreover, the fact that the Administrator wrongfully concluded that the unconstitutional conduct by the

(Cont) Copy of Inmate Supplemental Rebuttal Reply Submitted to Grievance Officer 2 + 2

officials [was] 'timely and appropriate' and is commensurate with community standards] under the policy, custom and practice of this prison — if so — then the "policy, ~~procedure~~ custom or action by those who represent official policy in this prison are of inaction which amounts to failure to protect [my] constitutional rights under the Eighth Amendment, constituting systematic and gross deficiencies in training and discipline of medical staff.

Respectfully submitted,

RECEIVED

SEP 0 8 2015

ADMINISTRATIVE
REVIEW BOARD

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000060

*Exhibit D*

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

W-2-10

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: June 22, 2015 | Date of Review: August 6, 2015 | Grievance #(optional): 62-6-15 |
| Offender: Moore, Shane | | ID#: B12832 |

Nature of Grievance: Medical - Treatment

**Facts Reviewed:** All information submitted to the Grievance Officer by the offender or institutional staff pertaining to this issue(s) being grieved has been thoroughly reviewed. Offender submitted a grievance dated 6-9-15 and grieves medical staff failed to provide adequate treatment by not calling him to see the doctor sooner.

Relief requested: Monetary compensation.

Counselor received and forwarded to the Health Care Unit (HCU) for review and response. The memo dated 6-10-15 from the HCU Administrator is attached. The memo states offender was seen by Nurse Mactura on sick call and she spoke to the doctor and received an order for antibiotic. On 4-13-15, the next day, you were to be seen by the doctor but was not seen. Please keep all scheduled appointments.

Grievance Office contacted the Health Care Unit for clarification and and update. Offender has been seen on the following dates since his chart was reviewed as noted above by the HCU Administrator.

On 4-19-15 NSC - Nurse Sick Call

On 6/27/15 for 2 Year Physical Exam with Dr. Travis

On 7-25-15 by Dr. Williams

Scheduled for Chronic skin condition with Dr. Trost on 8-27-15

> **RECEIVED**
> SEP 08 2015
> ADMINISTRATIVE
> REVIEW BOARD

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be MOOT. Offender is receiving medical treatment as determined by medical professionals. Please submit a request to be seen for any unresolved issues.

Lori Oakley
Print Grievance Officer's Name
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

Grievance Officer's Signature

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: August 13, 2015 | ☒ I concur   ☐ I do not concur   ☐ Remand | |

Comments:

Chief Administrative Officer's Signature          08/14/15

**Offender's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature          B-12832          09/07/15
ID#          Date

Distribution:  Master File; Offender          Page 1          DOC 0047 (Rev. 3/2005)

ARB Members (Generally) - address                                                    3 of 3

Macura. Alsina- Ortiz v. La Boy, 400 F. 3d 77, 81-82 (1st Cir. 2005) ( high-level officials could be liable
for line staff's failure to get medical care for an obviously sick prisoner if they knew of a continuing pattern
of culpable failures " to do so and made no reasonable attempt to remedy the problem); — Gail Walls
, RN & HCU Administrator.

Respectfully submitted,

ARB Members (Generally) - address

Exhibit E     1 of 3

includes front, back, and the backside of Exhibit D

Date: Sept 3, 2015

To: Administrative Review Board (ARB)
ARB Members (Generally)

RECEIVED

SEP 08 2015

ADMINISTRATIVE
REVIEW BOARD

From: Shawn Moore B-12352
Menard Correctional Center (MCC)
P.O. Box 1000
Menard, IL 62259

Re: [Baffling] Health Care Unit (H.C.U.) Memorandum - Response of GAIL WALLS, RN & H.C.U. Administrator and — Copy of Letter Provided to Grievance Officer, LORI OAKLEY — which was Submitted to her with my Grievance Dated June 9, 2015, as "Other Pertinent Information" in Rebuttal to the HCU Memorandum - Response of GAIL WALLS, RN & HCU Administrator

This correspondence serves to do two things: (1) to provide a copy of a letter offered as "other pertinent information" under AD 04.01.114 G.1.b. — which was submitted with my grievance of 6/9/15 to Grievance Officer, LORI OAKLEY ("Oakley"); and (2) to correct or clarify any information or reported findings presented to the ARB by MCC officials which was either mischaracterized, unsubstantiated, or inconsistent with the instant record on appeal.

The documentary evidence presented below was initially addressed in my letter submitted to Oakley, but is now being revisited in light of a newly discovered but previously overlooked detail which casts serious doubt on the truthfulness of several claims made by GAIL WALLS, RN & HCU Administrator ("Walls") in [her] Memorandum - response. For purposes of space and brevity only claims that are factual in nature and easily verifiable by the instant record on appeal have been raised, as appears more fully below.

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000051

ARB Members (Generally) - address

I. [Baffling] Memorandum - Response of Walls Regarding the [Date] that the Memorandum and Information Contained Therein was Alleged to have been Written

(1.) The grievance at issue dated June 9, 2015, hereinafter ("grievance"), was submitted to Bramlet, Brad E., Corr. Counselor II ("CCII Bramlet"). (2) The grievance was thereafter returned by CCII Bramlet on June 15, 2015, and was attached to the Memorandum-response of Walls. (3) On June 15, 2015, (later that day), I submitted the grievance and attached Memorandum returned by CCII Bramlet to Oakley, as well as a [LETTER] offered as other pertinent information
AD 04.01.114 G.1.b..

SEP 0 8 2015

RECEIVED
ADMINISTRATIVE REVIEW BOARD

II. In her Memorandum - response Walls states the following: "I have reviewed your LETTER and offer the following:" (emphasis added) — this statement is problematic for several reasons but for practi[cal] purposes only two are proffered.

A. If my grievance — attached Memorandum — and Letter were submitted together to the Grievance Office on JUNE 15, 2015, and stamped as received by the Grievance Office on JUNE 22, 2015, and reviewed by Oakley on AUGUST 6, 2015; HOW COULD Walls HAVE STATED IN HER MEMORANDUM - RESPONSE DATED [JUNE 10, 2015], THAT "I have reviewed your letter and offer the following;"?

B. Moreover, as a high-level supervisory official — i.e., H.C.U. Administrator — Walls was deliberately indifferent for [her] failure to "truthfully" inquire into essential facts that were necessary to make an informed judgment of the level of medical care provided to me by Nurse Maciura.

C. The three cases presented below state succinctly what otherwise might require much wording [with] respect to the medical staff and (their) management of my chronic skin condition overall — but more specifically as it relates to the instant matter. Edwards v. Snyder, 478 F.3d 827, 832 (7th Cir. 2007) (holding an allegation of a doctor's gratuitous two-day delay in treating an injury stated a deliberate indifference claim regardless of the adequacy of later treatment); — Dr. Trost. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285 (1976) ("intentionally interfering with the treatment once prescribed"); — Nurse Moore v. Ziegler, et al. (16-1239) IDOC No.: 000052

*Exhibit F*

Bruce Rauner
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: _Moore, Shung_    Date: _2/23/16_

Register # _B12833_

Facility: _Menard CC_

This is in response to your grievance received on ___9/8/15___. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _6/9/15_ Grievance Number: _22-6-15_ Griev Loc: _Menard_

○ Transfer denied by the Facility or Transfer Coordinator

○ Dietary _____

○ Personal Property _____

○ Mailroom/Publications _____

○ Assignment (job, cell) _____

○ Commissary _____

○ Trust Fund _____

○ Conditions (cell conditions, cleaning supplies)

○ Disciplinary Report dated _____
  Incident # _____

⦻ Other _Medical - Failed to get treatment timely_

Based on a review of all available information, this office has determined your grievance to be: _treatment timely by clinics_

○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.

○ Denied, in accordance with DR504F, this is an administrative decision.

⦻ Denied, this office finds the issue was appropriately addressed by the facility Administration.

○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

○ Denied as the facility is following the procedures outlined in DR525.

○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: _____

FOR THE BOARD: _Leslie McCarty_
Administrative Review Board

CONCURRED: _John R. Baldwin_
Acting Director
_2/24/16_

CC: Warden, _Menard_ Correctional Center
_Moore, Shung_, Register No. _B12833_

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000050

Conclusion. The GO and CAO were both in a position to investigate and if necessary, rectify the problem communicated to them via the established institutional grievance procedure — but deliberately failed to do so, notwithstanding indisputable evidence to the contrary.

   I respectfully request the ARB to compel the CAO of the MCC to instruct the Trust Office to reimburse $35.00 to my trust fund account.

                    Sincerely,

I have a copy of this letter in my file.

RECEIVED

JUN 28 2016

ADMINISTRATIVE
REVIEW BOARD

3 of 3

*Exhibit G*

W-2-10

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
### Return of Grievance or Correspondence

Offender: _Moore_ _Shung_ _____ MI _____ ID# _B12832_
            Last Name         First Name

Facility: _Menard_

☒ Grievance: Facility Grievance # (if applicable) _not provided_ Dated: _6/14/15_ _5/25/15_ or ☐ Correspondence: Dated: _____

Received: _8/21/15_ Regarding: _Staff Conduct - C/O Metz & Nurse Rayburn_
           Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information.  Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
        Office of Inmate Issues
        1301 Concordia Court
        Springfield, IL   62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:  Illinois Prisoner Review Board
        319 E. Madison St., Suite A
        Springfield, IL   62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☑ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
                                                  Date

☐ No justification provided for additional consideration.

---

Other (specify): _Grievances were received without required facility responses and 60 days past time frame_

---

Completed by: _Leslie McCarty_          _Leslie McCarty_          _9.21.15_
              Print Name                 Signature                 Date

Distribution: Offender
              Inmate Issues

Printed on Recycled Paper

DOC 0070 (Rev.4/2013)

(ARB Members (Generally) - address) 1 of 2

Exhibit H 1-7

Date: July 30, 2015 (Actually given to prison staff to be mailed on Aug 9, 2015)

To: Administrative Review Board ("ARB")
    ARB Members (Generally)

From: Shane Moore B-12332
      Menard Correctional Center ("MCC")
      P.O. Box 1000
      Menard, IL 62259

RECEIVED

AUG 21 2015

ADMINISTRATIVE
REVIEW BOARD

Re: How My Administrative Remedies Were Made Unavailable To Me By The Purposeful Misconduct Of MCC Prison Officials Regarding My Grievances Dated June 14, 2015 And June 21, 2015 — I Also Request A Formal Decision To These Grievances.

   The purpose of this correspondence is to explain the reasonable attempts that I made to properly file and exhaust my available administrative remedies and how that process was significantly thwarted by the affirmative misconduct of prison officials — as well as to demonstrate and petition good cause for an [anticipated] untimely filing. Moro v. Winsor, 21 WL 718687, *4-5 (S.D. Ill., Mar. 14, 2008) (holding remedy unavailable to prisoner whose appeal was untimely because he could not get a timely answer at the first level in a system that required a response in order to appeal).

   Summary  The issue(s) being presented to the ARB consist of two grievances which were originally timely filed, but neither responded to nor returned consistent with Department Rule 504 F, specifically, 20 Ill. Adm. Code 504.810 (a), and Administrative Directive ("AD") 04.01.114 G.A. a. (1)-(3). These two grievances are briefly described as follows: the grievance dated June 14, 2015, was filed against supervisory officials and line staff of North 2 Seg for their deliberate indifference to my serious medical needs, by refusing to contact the infirmary about my visibly ill and sickly appearance from a MRSA infection; and the second was filed on June 21, 2015, and was against Nurse Nieport for [her] deliberate indifference to my serious medical needs, by delaying treatment for my diabetes during a hypoglemic attack

   Discussion  When first filed on June 14, 2015, my grievance against supervisory officials and line staff of North, as well as my other grievance filed on June 21, 2015, against Nurse Nieport, hereinafter referred to as only ("MRSA") and ("Hypoglycemia"), respectively, were both submitted to Hill, Susan, Corr. Counselor II (CCII) ("Hill"). Moreover, Cameron Watson, Assistant Warden of Operations, was informed about Hill's failure to process and return my two grievances — as well as Hill — however, both grievances remain

(ARB Members (formally) attn) 2 of 2

unaccounted for to date.

<u>Procedural Background</u>   The filing of my two unanswered [grievances] — i.e., MRSA and Hypoglycemia — including to whom and when submitted. — as well as their dispositions thereof, have been listed in chronological order, and separated to make easier to understand, and if needed, reference.  The chronological filings of both grievances, including any other papers pertinent to their final dispositions thereof, have been attached hereto, and serve as documentary evidence to demonstrate and petition good cause for two [anticipated] untimely filings.

Respectfully submitted,

RECEIVED

AUG 21 2015

ADMINISTRATIVE
REVIEW BOARD

Chronological Filings Of MRSA & Other Various Grievances

(C - Filings) 1 of 2

Chronological Filing Of My Grievance Dated June 14, 2015 Submitted To CCII Hill ("Chronological Filing #1")

To reiterate, the two grievances mentioned in my ARB Members (Generally) - address, are also hereinafter incorporated by reference in all other documents regarding the afore-mentioned issue(s) presented herein to the ARB.

(1) On June 14, 2015, I filed my MRSA grievance to CCII Hill — in addition thereto — Hill was given a missive [captioned] "Grievance Dated June 19, 2015 But Actually Submitted On June 14, 2015 Within Timeframe Outlined By Department Rule 504 F," which basically served notice of my MRSA grievance and requested a Counselor's Response to it — however — neither my MRSA grievance nor missive was responded to or returned by Hill.

(2) On June 21, 2015, I sent a (1) pg missive to CCII Hill, which briefly outlined [her] prescribed duties under the Illinois Administrative Code, with respect to returning a [Counselor's Response] to my properly filed MRSA grievan — but it was neither responded to nor returned by Hill.

(3) On June 23, 2015, I spoke to CCII Hill face to face and inquired of her about the status of my MRSA grievance and whether or not she had received any of my missives — Hill replied that she hadn't but would check again and also to send her kite.

(4) On July 1, 2015, I received a Memo from CCII Hill in response to my inquiry of her on 6/23/15 regarding my unanswered MRSA grievance — it stated the following: "TO: Moore B-18832 W-2-17 Grievance 6-14- 6-21- 6-8-15 Hill grievance answered and returned. via inst. mail. I have no pending grievances on my desk." (Original Memo is available for examination as documentary evidence, if requested).

(5) On or about July 12, 2015, I spoke to Cameron Watson, Assistant Warden of Operations ("Watson, Asst. Warden"), as he was doing a gallery tour of the West House, wherein I made an informal complaint about CCII Hill's failure to respond to my properly filed MRSA grievance.

(6) On July 15, 2015, I received a Memorandum from Watson, Asst. Warden, which basically restated the memo response received from Hill on 7/1/15 — in other words — my properly filed MRSA grievance simply disappeared and remains unaccounted for to date. (Original Memo is available for examination as documentary evidence, if requested).

Chronological Filing Of My Grievance Dated June 21, 2015 Submitted To CCII Hill ("Chronological Filing #2")

RECEIVED
AUG 21 2015
ADMINISTRATIVE
REVIEW BOARD

(C-Filings) 2 of 2

(1) On June 21, 2015, I filed my Hypoglycemia grievance to CCII Hill — in addition thereto — Hill was given a missive [captioned] "Request [Counselor's] Response" To Grievance Dated June 21, 2015. Submitted Within Timeframe Outlined By Department Rule 504.F, "," — however — neither my Hypoglycemia grievance nor missive was responded to or returned by CCII Hill.

(2) On June 23, 2015, I spoke to CCII Hill face to face and inquired of her about the status of my Hypoglycemia grievance and whether or not she had received any of my missives — Hill replied that she hadn't but would check again and to send her a [note].

(3) On July 1, 2015, I received a Memo from CCII Hill in response to my inquiry of her on 6/23/15 regarding my unanswered Hypoglycemia grievance — the content of that Memo has already been stated in its entirety. See Chronological Filings #1 & (4)

(4) On or about July 12, 2015, I spoke to Cameron Watson, Assistant Warden of Operations ("Watson, Ass Wrdn of Ops"), as he was doing a gallery tour of the West House, wherein I made an informal complaint about CCII Hill's non-response to my properly filed Hypoglycemia grievance.

(5) On July 15, 2015, I received a Memorandum from Watson, Asst. Wrdn of Ops, which basically reiterated the memo - response received from Hill on 7/1/15 — in other words — my properly filed Hypoglycemia grievance simply disappeared and remains unaccounted for to date.

Relief Requested   I respectfully request that the ARB provide relief in one or more of the following manners: (1) schedule an conduct an in-person or via video or telephonic - Conference hearing to examine documentary evidence tending to prove my claims ; (2) Compel CCII Hill to comply with Departmental Administrative Directive (AD) 04.01.114 G.4.a. (1) -(3), and provide a Counselors Response to my MRSA and Hypoglycemia grievances ; or alternatively (3) that both grievances be considered for good cause.

Respectfully submitted,

[signature]

RECEIVED

AUG 21 2015

ADMINISTRATIVE
REVIEW BOARD

*Copy of Missive to Hill About MRSA Grievance*

(Hill/MRSA) 1 of 1

Date: June 14, 2015

To: Hill, Susan
  Corr. Counselor II

From: B-12832 Moore, Shung
  W-2-17

Re: Grievance Dated June 15, 2015 But Actually Submitted On June 14, 2015 Within
  Timeframe Outlined By Department Rule 504 F

The purpose of this letter is to serve notice that on June 14, 2015 — I filed a grievance to
Hill, Susan, Corr. Counselor II ("Hill") — and that pursuant to Administrative Directive
(AD) 04.01.114 G. 4. a. (1)-(3), a [Counselor's Response] is required to be provided to an
offender in disposition of an institution's administrative grievance procedure.

In short, I need your Counselor's Response in order to appeal my grievance to the Grievance
Office. See [AD 04.01.114 G. 4. b.].

      Respectfully submitted,

**RECEIVED**

AUG 2 1 2015

**ADMINISTRATIVE
REVIEW BOARD**

(NR) 1 of 1

Copy of Missive to Hill About Non-response to MRSA Grievance

Date: June 21, 2015

To: Hill, Susan
   Corr. Counselor II

From: B-12832 Moore, Shung
   W-2-17

Re: Request [Counselor's Response] To Unanswered Grievance Submitted Within Timeframe Outlined
   By Department Rule 504

The purpose of this letter is to serve notice that on June 14, 2015, I filed a grievance to Hill, Susan, Corr Counselor II ("Hill"). The grievance at issue was against supervisory officials and line staff of North 2 for their deliberate indifference to my serious medical needs and filed pursuant to 20 Ill. Adm. Code 504-810(a).

Moreover, I request a Counselor's Response to my grievance as is required under Administrative Directive (AD) 04.01.114 G.4.a. (1)-(3), in order to appeal my grievance to the Grievance Officer. See [AD 04.01.114 G.4.b.].

Respectfully submitted,

**RECEIVED**
AUG 2 1 2015
ADMINISTRATIVE
REVIEW BOARD

(CR) 1 of 1

Copy of Missive to Hill About Hypoglycemia Grievance

Date: June 21, 2015

To: Hill, Susan
 Corr. Counselor II

From: B-12832 Moore, Shaug
 W-2-17

Re: Request [Counselor's Response] To Grievance Dated June 21, 2015 Submitted Within Timeframe
 Outlined By Department Rule 504 F

The purpose of this letter is to serve notice that on June 21, 2015, I have filed a grievance to Hill, Susan,
Corr. Counselor II ("Hill"). The grievance at issue is against Nurse Niepert for her deliberate indifference to
my serious medical needs and filed pursuant to 20 Ill. Adm. Code 504.810(a).

Correctional Counselors are required pursuant to Administrative Directive (AD) 04.01.114 G.4.a. (1)-(3), to provide
an offender with a [Counselor's Response] in disposition of an institution's administrative grievance procedure.

 Respectfully submitted,

**RECEIVED**

AUG 2 1 2015

ADMINISTRATIVE
REVIEW BOARD

*Exhibit I*

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date: June 14, 2015 | Committed Person: (Please Print) Shune Moore | ID#: B-12832 |
|---|---|---|
| Present Facility: Menard Correctional Center (MCC) | Facility where grievance Issue occurred: MCC | |

**NATURE OF GRIEVANCE:**

| | | | |
|---|---|---|---|
| ☐ Personal Property | ☐ Mail Handling | ☐ Restoration of Good Time | ☐ Disability |
| ☑ Staff Conduct | ☐ Dietary | ☑ Medical Treatment | ☑ Other (specify) 1st & 8th Amdt Violations (and also state-tort law) violations |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | | |

☐ Disciplinary Report: ___/___/___  _____
                        Date of Report        Facility where issued

Note:  Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  Chief Administrative Officer, only if EMERGENCY grievance.
  Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
  administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
  Administrative Officer.

Brief Summary of Grievance: On April 9, 2015, I gave a request form to Nurse Chressy Rayburn to submit to Sick Call for me — it described my medical problem as being a potential MRSA outbreak stemming from a chronic MRSA condition contracted while in the MCC. On April 12, 2015, I was taken to Sick Call and examined by Nurse _____. Although I was suffering from an obviously serious medical condition at the time that Nurse _____ examined me — it would go untreated for (4) days due to the acts or omissions of Nurse _____ and other prison officials — whose conduct violated both the First and Eighth Amendments — as well as various state - tort laws. In short, as a trained medical professional — a registered nurse - Nurse _____ observed ample evidence of my symptoms — and was aware or should have been that I required prompt medical attention and that delay would exacerbate my health problem. Notwithstanding, I was denied adequate medical care at my Sick Call examination by Nurse _____ — and later — by supervisory officials and line staff who repeatedly failed to take action after the infirmary staff was made aware ... [illegible struck-through text] ... not limited to a MRSA infection, acute swelling of facial tissues, fluid and tissue impairment, and a continuous systemic facial wound requiring continuous ...

Relief Requested: Change the policy on medical care, apply discipline to those who violated my constitutional rights and grant legal relief as well as necessary medical care in the future. I also ask for an investigation into this grievance to determine what happened to me so as to prevent it from happening again. Also compensatory and punitive damages under both federal and state Constitution, if applicable — as well as state - tort laws.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____     B-12832        06/14/15
        Committed Person's Signature                ID#            Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date
Received: ___/___/___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

_____    _____    _____
Print Counselor's Name           Counselor's Signature          Date of Response

---

RECEIVED

**EMERGENCY REVIEW**

Date
Received:  AUG 2 1 2015        Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
ADMINISTRATIVE                                                                      ☐ No; an emergency is not substantiated.
REVIEW BOARD                                                                         Committed person should submit this grievance
                                                                                     in the normal manner.

_____     ___/___/___
        Chief Administrative Officer's Signature              Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued) **DOC 0046, Page 2**

BACKGROUND – On Apr. 10, 2015, after being returned to my cell from Sick Call and denied antibiotics and analgesics – my condition began to rapidly deteriorate and would continue to do so until an emergency medical intervention four days later. Later that day during the evening, I asked the nurse as she did med pass whether or not she had any antibiotics or [a doctor's call line pass] for me – she replied "No," but stated that she'd check once she returned to the HCU – however – she never returned. On Apr. 13, 2015, I woke up that morning and realized that the entire left side of my face had swollen to twice its normal size – and was extremely painful to the touch. On Apr. 14, 2015, I stopped Ofc. Hood while he was doing his [7 o'clock count check] and told him that I needed emergency medical treatment after showing him my face. Ofc. Hood informed me that I had a doctor's call line pass scheduled for that morning. After asking Ofc. Hood several times about why I hadn't been called for Sick Call – and noticing that it was already 1:00 p.m., I began kicking my door in protest to how I felt North 2 prison officials were being deliberately indifferent to my health problem. About twenty minutes later, Ofc. Hood came and informed me that Sick Call had cancelled my call pass and that there was nothing that he could do about it. I screamed at Ofc. Hood and asked him to get me somebody that could help me if he was unable to do so. Ofc. Hood left and returned about (10) minutes later and informed me that he had told Sgt. Pelker about my medical situation and request for emergency medical treatment, and that there was simply nothing else he could do. Ofc. Hood left for the day and Sgt. Pelker never came to see me. The pain of being seemingly systematically denied medical treatment, coupled with my physical pain, gave rise to psychological anguish and fear of losing my eye or vision due to the MRSA-related fluid building up around it. That night I experienced insomnia due to the physical and emotional pain resulting from my untreated MRSA condition. On Apr. 15, 2015, [again], I stopped Ofc. Hood at [7 o'clock count check] and requested emergency medical attention after showing him how much my condition had worsened overnight. Ofc. Hood informed me that I had another doctor's call line pass and stated "Hopefully they'll get to you today because I can see something's wrong." Shortly thereafter, Ofc. Hood returned and told me that the doctor didn't show up and that my call pass had been cancelled. At that point, roughly five days after the onset of my MRSA infection – my physical weakness, feeling sick, nausea, pains in my face and neck – and their pains, emotional anxiety and distress – overwhelmed me. I asked Ofc. Hood to find out whether his supervisor would authorize him to take me directly to the HCU. Ofc. Hood left and returned about (10) minutes later and told me that he had talked to Sgt. Pelker about my medical situation – after which – [strangely] – Ofc. Hood asked me "Have you pissed anybody off?" I asked Ofc. Hood what he meant by asking me that. Ofc. Hood replied "I just don't understand what's going on" and then stated "It's obvious you need medical treatment." Ofc. Hood stated that his "hands were tied" because he couldn't go over his [supervisors] – thereby unwittingly but implicitly acknowledging that his supervisors had ordered him not to help me. Later that day, after [3 p.m. count check], I immediately informed Ofc. Easton that I needed emergency medical treatment (as was obvious from my swollen face and nearly shut left eye) when he asked me was I coming out for insulin. I also told Ofc. Easton that I was too weak to go up two flights of stairs to get my insulin shot. Ofc. Easton stated that he would let Lt. Eovaldi know about my medical situation. Ofc. Easton returned later to feed and nodded in the affirmative when I asked him whether or not he had informed Lt. Eovaldi about my medical problem. Lt. Eovaldi never came [or] sent anyone to see me. Ofc. Easton in like manner, completely ignored me everytime I called after him yelling for medical attention – until around 8 p.m. – and then – only because he had to give my cellmate (Tony Shanklin B-35662) mail. On Apr. 16, 2015, I told Ofcs. Simmons and [Harris?] to put on protective gloves before ~~opening~~ my chuckhole to cuff me and take me for my insulin shot, because the sore on my face had become pyogenic – i.e., pus-producing (meaning that my MRSA condition had progressed into a full-blown infection requiring quarantine. Ofcs. Simmons and [Harris?] both helped me up the two flights of stairs to the Infirmary where insulin was being administered. After administering me my insulin, Nurse Schaefer told the officers that I needed to be isolated and then called the HCU. About five minutes later Nurse Pam Hanna entered the Infirmary and spoke briefly with Nurse Schaefer and then came and looked me over. Nurse Hanna concluded after examining me that I needed to be quarantined, as did Nurse Schaefer. I was then given antibiotics and analgesics to treat my MRSA infection and unofficially placed on quarantine from out of 206 to 628 at the medical instruction of Nurses Hanna and Schaefer. I do not remember every prison official to whom I talked or showed my physical illness, but I consistently let every officer on every shift know (as my strength allowed) that I needed emergency medical care – however – with the exception of Ofc. Simmons, Nurses [Schaefer] and Hanna, nobody else would help me. Retaliation may have caused this to happen to me in general and should be looked into as well. Grievance Ended.

*Exhibit J*

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

Offender: *Moore*                    *Shung*              ___ *B12832*
                   Last Name                          First Name          MI        IDe

Facility: *Menard C C*

☒ Grievance: Facility Grievance # (if applicable) *NOT Provided* Dated: *7/12/15*   or ☐ Correspondence: Dated: _____

Received: *10/20/15* Regarding: *Staff Conduct*
                  Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
- ☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
- ☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.
- ☐ Provide dates of disciplinary reports and facility where incidents occurred.
- ☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:  Administrative Review Board
Office of Inmate Issues
1301 Concordia Court
Springfield, IL   62794-9277

**Misdirected:**
- ☐ Contact your correctional counselor regarding this issue.
- ☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
- ☐ Contact the Record Office with your request or to provide additional information.
- ☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
- ☐ Address concerns to:  Illinois Prisoner Review Board
319 E. Madison St., Suite A
Springfield, IL   62706

**No further redress:**
- ☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.
- ☒ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
- ☐ This office previously addressed this issue on _____
                                          Date
- ☐ No justification provided for additional consideration.

Other (specify): *Issue of 7/12/15 60 days past time frame*

Completed by: Leslie McCarty                    *Leslie McCarty*            *10/22/15*
                  Print Name                          Signature                    Date

Distribution:   Offender
                 Inmate Issues

Printed on Recycled Paper                    DOC 0070 (Rev.4/2013)

medical grievance must be measured from the date of denial of care, not from the beginning of the medical problem (if there is a deadline measured in days), report and recommendation adopted in part and remanded on other ground, 2008 WL 907453 (W.D. Mich., Mar. 28, 2008). One court held that a complaint about the treatment of chronic medical condition is "ongoing" and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." Ellis v. Vadlamudi, 568 F. Supp. 2d 778, 783-84 (E.D. Mich. 2008).

IV. Collective Failure Of Prison Officials To Timely Provide Diabetic Tray Necessitated Self-Regulation Of Insulin Resulting In Missed Insulin Shots     (1) On Aug. 11, 2014 — Dr. Trost (Medical Director), concluded after an examination that an additional diabetic snack tray was needed to effectuate the proper course of treatment necessary to [help] stabilize my blood sugar levels and prevent me from having continue hypoglycemic-attacks.     (2) Hypoglycemia occurs when a diabetic experiences an abnormally low amount of sugar in the blood due to an [insufficient] amount of food to eat.     (3) I have suffered an abnormal loss of body weight — increased blood pressure — and become increasingly more susceptible to bacterial infection — due to the debilitating effects of not being able to resume my normal regimen of insulin.     (4) Since prison officials failed to either provide — order — or comply with the medical treatment deemed necessary to treat my chronic hypoglycemia — i.e., an additional diabetic snack tray — I was forced to self-regulate my insulin which necessarily occasioned missed insulin shots.     (5) However, this special diet tray was not received until (9) months (3) weeks and (3) days (or 264 days) later on May. 2015.

V. Memorandum of Law     "To establish a claim of deliberate indifference to serious medical needs under § 1983, plaintiff must demonstrate that he suffered from an objectively serious medical need that prison officials knew of but deliberately disregarded the need." Johnson v. Hamilton, 452 F. 3d 967, 972-73 (8th Cir. 2010); Johnson v. Harris, 479 F. Supp. 333, 335-37 (S.D.N.Y. 1979) (failure to provide special diet for diabetic"); Hazen v. Pasley, 768 F.2d 226, 23 n. 2 (8th Cir. 1985) (diet causing "notable weight loss and mildly diminished health" was unconstitutional); "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Grayson v. McCoy, 573 F. 3d 616, 619 (7th Cir. 2010)

Respectfully submitted,
Moore v. Ziegler, et al. (16-1239) IDOC No.:  000075

*Exhibit K*
Includes front and back   1 of 2

Date: Oct. 15, 2015

To: Administrative Review Board ("ARB")
ARB Members (Generally)

From: Shuno Moore B-12832
Menard Correctional Center ("MCC")
P.O. Box 1000
Menard, IL 62259

RECEIVED

OCT 2 0 2015

ADMINISTRATIVE
REVIEW BOARD

Re: How My Administrative Remedies Were Made Unavailable To Me By The Purposeful Misconduct Of MCC Prison Officials Regarding My Grievance Dated July 12, 2015 — I Also Request A Formal Decision To That Grievance (Clothing Deprivation)

The purpose of this correspondence is to explain the reasonable attempts that I made to properly file and exhaust my available administrative remedies and how that process was significantly thwarted by the affirmative misconduct of prison officials — as well as to demonstrate and petition good cause for an untimely filing. Moro v. Winsor, 2008 WL 718697,* 4-5 (S.D. Ill. Mar. 14, 2008) (holding a remedy unavailable to prisoner whose appeal was untimely because he could not get a timely answer at the first level in a system that required a response in order to appeal).

The issue being presented to the ARB consists of a grievance which was originally filed timely on July 12, 2015, but neither responded to nor returned by Hill, Susan M., Corr. Counselor II ("Hill") in a manner consistent with Department Rule 504 F— specifically, [20 Ill. Adm. Code 504.810(a)] and [AD 04.01.114 G.4.a.(1)-(3)].

The filing of my (Clothing Deprivation) grievance — including to whom submitted and when — as well as any follow-up inquiries regarding the status/disposition of it, have been listed in chronological order and numbered to make it easier to understand and reference.

Moore v. Ziegler, et al. (16-1239) IDOC No.:  000077

2 of 2

(1) On July 12, 2015, I filed my CD grievance to Hill by Ofc. Rhodes of the 11 to 7 a.m., 3d shift but it was neither responded to or returned by Hill.

(2.) On Aug. 14, 2015, I inquired of Hill about the status of my CD grievance to which Hill replied that she only had one grievance on her desk at that time and that she was pretty sure it wasn't mine, but would double-check and let me know.

(3) On Oct. 13, 2015, I spoke with a new Counselor named Matthews who had replaced Hill as the Counselor for West House 2 Gallery — according to Matthews several complaints had been lodged against Hill for not responding to or returning inmate grievances submitted to her.

Relief Requested — I respectfully request that the ARB provide relief in one or more of the following manners: (1) schedule and conduct an in-person or via video or telephonic-conference hearing to examine documentary evidence tending to prove my claim(s); (2) Compe- / order Hill to comply with AD 04.01.114 G. 4.2 (1)-(3) as regards my CD grievance; and/or alternatively (3) that my CD grievance be considered for good cause.

Respectfully submitted,

**RECEIVED**

OCT 20 2015

**ADMINISTRATIVE**
**REVIEW BOARD**

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000078

Exhibit L
Includes front and back

## ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

Date: July 12, 2015    Offender (Please Print): Shing Moore    ID#: B-12832

Present Facility: Menard Correctional Center (MCC)    Facility where grievance issue occurred: MCC

NATURE OF GRIEVANCE:
- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): [illegible] State tort law violations

- [ ] Disciplinary Report: ___ Date of Report ___ Facility where issued

Brief Summary of Grievance: [handwritten text, largely illegible]

Relief Requested: [handwritten text, largely illegible]

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature [signature]    ID# B-12832    Date 7/12/15

RECEIVED
Date Received: OCT 20 2015

Response: ADMINISTRATIVE REVIEW BOARD

EMERGENCY REVIEW

Date Received: ___
Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Distribution: Master File; Offender    Page 1    DOC 0046 (Rev. 3/2005)



ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE (Continued)

Grievance Ended

Moore v. Ziegler, et al. (16-1239) IDOC No.: 000080