IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHUNG MOORE, # B-12832,

   Plaintiff,

  vs.         Case No. 17-cv-943-DRH

C/O BRACE,
LT. EOAVALDI,
LT. MORRIS,
LT. WELBORN,
MAJ. MONJE,
C/O DUNBAR,
SGT. HARRIS,
KIMBERLY BUTLER,
LESLIE McCARTY,
MACIURA,
SGT. PELKER,
DR. TROST,
GAIL WALLS,
LORRIE OAKLEY,
DIRECTOR BALDWIN,
and JOHN DOES 1, 2, and 3,

   Defendants.

# MEMORANDUM AND ORDER

**HERNDON, District Judge:**

   Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that he was subjected to retaliation; was deprived of clothing, bedding, and necessary hygiene supplies, which aggravated a serious medical condition; and was denied medical attention. This case is now before the Court for a preliminary

1

review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of

action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

As background for his retaliation claim, Plaintiff states that on March 29, 2015, he filed a grievance alleging that C/O Brace used excessive force against him. (Doc. 1, p. 9). Two days later, Brace confronted Plaintiff while escorting him to the diabetic line, telling Plaintiff that his grievance was going nowhere and he was wasting his time. *Id.* Later, Brace and other officers including Lt. Welborn verbally mocked Plaintiff. On April 7, 2015, Plaintiff resubmitted the Brace grievance to his counselor after learning that she had not received it.

Later on April 7, 2015, while the prison was on lockdown, Plaintiff gave his marked laundry bag containing all his clothing and bedding to Officer Grace (who is not a Defendant) to deliver to the laundry. The next day, Plaintiff's laundry bag and contents were not returned to him. Plaintiff's cellmate's laundry bag had been ripped open and was missing some items, but all other inmates received their laundry. Hood (who is not listed among the Defendants) searched for Plaintiff's laundry but reported it was lost. Plaintiff asserts that Brace caused the

disappearance of Plaintiff's clothing and bedding in retaliation for the grievance Plaintiff had filed against him only days before. (Doc. 1, p. 10).

On April 9, Plaintiff informed several officers that his clothing and bedding had been missing since April 7, but the items were not found and nobody would assist Plaintiff in replacing them. On April 10, 2015, Eoavaldi was called to Plaintiff's cell in response to Plaintiff's request to be placed on a hunger strike. (Doc. 1, p. 11). Eoavaldi had Plaintiff fill out a requisition form to receive more clothing and bedding.

On April 16, 2015, Plaintiff had not received any replacement items. He was suffering from an "untreated MRSA infection." (Doc. 1, p. 11). While at the infirmary, Plaintiff informed Morris and Welborn that he was still without clothing or bedding; Morris promised to inform Major Monje of the problem. The nurse who gave Plaintiff his insulin saw that half of Plaintiff's face was extremely swollen, and referred him to be temporarily quarantined because of the MRSA infection. Morris and Welborn saw Plaintiff's condition and his state of uncleanliness due to his lack of clothing and hygiene items. (Doc. 1, p. 12).

Later on April 16, 2015, after Plaintiff was moved to the quarantine cell, he informed Dunbar that his cell was filthy and he was in need of a change of clothing, bedding, personal hygiene items, and disinfectant for the cell. (Doc. 1, p. 12). Dunbar failed to provide any of these items. Plaintiff saw Eoavaldi that day and told him that he had not received any clothing or bedding despite submitting the request slip to him on April 10. Eoavaldi told Plaintiff he would just have to

wait.

On April 22, 2015, Plaintiff told Dunbar that he still was without clothing, bedding, or hygiene products, but Dunbar just shrugged and walked away. (Doc. 1, p. 12). He also informed a mental health team member (Ms. Thomas) of his predicament, and Thomas promised to inform then-Warden Butler. (Doc. 1, p. 13).

Between April 28 and May 8, 2015, Plaintiff had three more encounters with Eoavaldi and two with Dunbar, in which he informed those Defendants that he had still never been provided with replacement clothing or bedding, had been without toothpaste, soap, or a washcloth for many days, and that the lack of these items had aggravated his MRSA infection. (Doc. 1, pp. 13-14). Eoavaldi took another clothing request slip from Plaintiff, but Plaintiff still received nothing. Finally on May 13, 2015, Officer Phillips had Plaintiff fill out another clothing slip and personally brought Plaintiff new clothing items and a state-issued hygiene package. Until that time, Plaintiff had been without a change of clothing or bedding for 35 days, and was deprived of hygiene items for 57 days. (Doc. 1, p. 15).

At the same time that Plaintiff was attempting to get his clothing and bedding replaced, he was unable to obtain sufficient personal hygiene supplies, and medical care for his MRSA infection was delayed and denied. Plaintiff has a chronic MRSA infection which regularly flares up, and his inability to adequately wash himself (he had no soap) or change into clean clothing complicated that

condition.

On April 12, 2015, Plaintiff submitted a commissary request for hygiene items including soap, but the paperwork was lost. (Doc. 1, p. 16). On April 17, 2015, Plaintiff received indigent supplies of miniature shampoo bottles, toothpaste, and toothbrush, but those items only lasted one week, and he was out of soap. He tried again to get soap from the commissary, seeking Dunbar's help on April 23. (Doc. 1, pp. 17-18). Another officer (Warhausen) told John Doe #1 (Commissary Officer) that Plaintiff needed soap for his MRSA condition and had not been allowed to shop at commissary for several weeks. Warhausen reported back to Plaintiff that John Doe #1 refused to allow Plaintiff to purchase the hygiene items, because the commissary was doing inventory at the time. (Doc. 1, p. 18). Also on April 23, 2015, Plaintiff told Sgt. Harris that he needed soap and toothpaste from commissary and had been wearing the same soiled clothing since April 7. Harris refused to take any action to help Plaintiff, telling him he was a "whiner and complainer." (Doc. 1, p. 19). Plaintiff sent a letter to Dr. Trost requesting a special medical permit allowing him to purchase extra soap from the commissary, with no result. *Id.*

On April 10, 2015, Plaintiff submitted a sick call request because he believed his MRSA was worsening. The next day (April 11), the left side of Plaintiff's face was swollen. Officer Griffin conveyed Plaintiff's request for antibiotics to Nurse Maciura, who responded that Plaintiff was scheduled for a sick call visit on April 12. (Doc. 1, pp. 19-20). On April 12, Maciura examined

Plaintiff and saw the large sore and swelling on the left side of Plaintiff's face. He explained it was extremely painful, and his outbreaks had been occurring more frequently as documented in his medical records. Maciura denied Plaintiff's request for pain medication and antibacterial ointment, stating that he could ask for those when he sees the doctor.

On April 13, the left side of Plaintiff's face was swollen to twice its size, his eye was nearly swollen shut, and his pain was extreme. (Doc. 1, p. 21). He was not seen by any medical staff on that day. On April 14, Plaintiff learned he had a doctor's visit scheduled that day, but it was later cancelled. Plaintiff sought help from Officer Hood (who is not named as a Defendant). Hood conveyed Plaintiff's request for urgent medical care to Sgt. Pelker, but Pelker took no action. (Doc. 1, p. 22). On April 15, Plaintiff's doctor visit was cancelled again; both Pelker and Eoavaldi refused to request medical attention for Plaintiff despite being informed of his condition. (Doc. 1, p. 23).

On April 16, 2015, Plaintiff finally saw Dr. Trost and received treatment for his facial wound and infection. He learned that Maciura (or possibly some other individual) had written in his medical records that Plaintiff had been prescribed antibiotics some days earlier, and had refused to attend a doctor's appointment – neither of which was true. (Doc. 1, p. 24). He faults Maciura and Trost for a 4-day delay before he received any medical treatment. (Doc. 1, pp. 24-25). Furthermore, he asserts that John Doe #2 (a doctor) failed to order antibiotics for him when Maciura allegedly requested them, and cancelled his doctor's call-

line passes. (Doc. 1, p. 26). He also names John Doe #3 (medical official) for falsely stating in his medical chart that Plaintiff had received antibiotics and that he went to the yard instead of attending one of his doctor's appointments. *Id.*

Plaintiff claims that Wexford, the corporation that employs Dr. Trost and Health Care Administrator Walls, maintained a policy or custom of failing to employ sufficient staff to provide adequate medical care to inmates, and this policy caused the delays and cancellations of Plaintiff's appointments. (Doc. 1, pp. 27-28). However, he did not include Wexford among his list of Defendants. (Doc. 1, pp. 1-6).

Finally, Plaintiff seeks to hold Administrator Walls liable for responding to Plaintiff's June 2015 grievance with a memorandum that included the false information that Plaintiff skipped a doctor's appointment, and failing to investigate the facts regarding the delay in Plaintiff's medical care. (Doc. 1, pp. 26-27). Similarly, he claims that Oakley, Butler, Baldwin, and McCarty mishandled, failed to investigate, and/or wrongly denied his grievance(s) as he pursued an appeal between June 2015 and February 2016. (Doc. 1, pp. 28-30).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in

the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment retaliation claim against Brace, for causing Plaintiff's clothing and bedding to be lost or destroyed on or about April 7, 2015, after Plaintiff filed a grievance against Brace for excessive force;

> **Count 2:** Eighth Amendment deliberate indifference claim against Eoavaldi, Morris, Welborn, Dunbar, Harris, Monje, Butler, and John Doe #1 (Commissary Officer) for subjecting Plaintiff to unsanitary conditions of confinement, by refusing or failing to replace Plaintiff's clothing and bedding, refusing to give Plaintiff disinfectant to clean his quarantine cell, and failing to provide Plaintiff with personal hygiene supplies or permit him to purchase them;

> **Count 3:** Eighth Amendment deliberate indifference claim against Pelker and Eoavaldi for failing to summon medical care for Plaintiff on April 14-15, 2015, despite being informed of Plaintiff's severe and painful facial swelling;

> **Count 4:** Eighth Amendment deliberate indifference claim against Trost, Maciura, John Doe #2 (doctor), and John Doe #3 (medical official) for delaying and denying treatment for Plaintiff's painful facial MRSA infection between April 10-15, 2015;

> **Count 5:** Claim against Walls, Oakley, Butler, McCarty, and Baldwin for mishandling and/or denying Plaintiff's grievances over the denial and delay in obtaining medical care for his MRSA condition in April 2015.

Counts 1 through 4 shall be referred to a United States Magistrate Judge for further consideration against some of the Defendants. Count 5 shall be dismissed for failure to state a claim upon which relief may be granted.

The Court notes that Plaintiff includes allegations in his statement of claim against "Defendant Hood" and the Wexford corporation, indicating that he intended to assert civil rights claims against them. (Doc. 1, pp. 10, 21-22, 25, 27-

28).  However, he did not include Hood or Wexford among the list of Defendants, nor did he include them in his case caption.  (Doc. 1, pp. 1-6).  When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice.  *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").  If Plaintiff intended to bring a claim against Hood or Wexford, he must submit an amended complaint.

## Count 1 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'"  *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

In this case, Plaintiff alleges that just after he filed the grievance against Brace, Brace taunted him that the complaint was going nowhere and was a waste of time.  Plaintiff then learned that the grievance form never made it to its destination (his counselor), so he resubmitted it.  The next day, Plaintiff's laundry

came up missing and his cellmate's laundry bag had also been tampered with, while all other inmates in their area received their clean laundry without a problem.  This chronology arguably presents a colorable claim of retaliation by Brace; therefore, this retaliation claim survives review under 28 U.S.C. § 1915A. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").  **Count 1** shall proceed against Brace.

## Count 2 – Conditions of Confinement

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component.  *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities.   *Rhodes*, 452 U.S. at

347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989);

*Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, this is deliberate indifference to inmate health or safety. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer*, 511 U.S. at 834); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)). Further, "conditions of confinement, even if

not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 842 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis*, 468 F.3d at 493; *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)).

In Plaintiff's case, he alleges that he was deprived of adequate clothing and bedding for well over a month after his laundry disappeared. He was forced to wear the same soiled clothes for this entire period, and was unable to obtain soap, a washcloth, or adequate shampoo to clean his body or clothing. At the same time, he was suffering from a severe MRSA infection, which he asserts was aggravated by his inability to maintain his personal hygiene. Further, he was placed into a quarantine cell that was in filthy condition, without any means to clean the area. These facts and the duration of time that Plaintiff had to endure the unsanitary conditions indicate that he faced an objectively serious risk to his health.

Turning to the subjective element of the claim, Plaintiff states that he told Dunbar about the condition of the quarantine cell, but Dunbar failed to give him disinfectant to clean it. Plaintiff personally informed Morris, Welborn, Eovaldi, Dunbar, and Harris about his need for clothing and bedding and told them of his health and hygiene problems, but they failed to remedy these conditions. Similarly, Plaintiff personally told Harris, and conveyed a message to John Doe #1, that he was in dire need of soap and personal hygiene products from the

commissary, but these Defendants refused to help him obtain those items.  **Count 2** shall therefore proceed against Eoavaldi, Morris, Welborn, Dunbar, Harris, and John Doe #1 (Commissary Officer).

Plaintiff also seeks to assert this conditions-of-confinement claim against Monje and Butler.  However, he does not describe having any direct contact with those individuals to inform them of his deprivation of adequate clothing, bedding, or hygiene products.  Morris told Plaintiff he would tell Monje about Plaintiff's needs, and Ms. Thomas (mental health team) told Plaintiff she would inform Butler.  However, there is no indication that Plaintiff's complaints were conveyed to Monje or Butler.  If these Defendants did not know about Plaintiff's situation and the risks to his health, they cannot be held liable for deliberate indifference to the unsanitary conditions he faced.  For this reason, the claim in **Count 2** shall be dismissed without prejudice against Monje and Butler.

## Count 3 – Deliberate Indifference to Serious Medical Condition – Correctional Officers

Like the conditions-of-confinement claim in Count 2, a claim for deliberate indifference to a serious medical condition has two elements.  In order to state a cognizable claim, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant knew of a risk to the inmate of serious harm from that condition, yet acted or failed to act in disregard of that risk.  *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th

Cir. 2015). A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Between April 10 and April 15, 2015, Plaintiff's facial swelling became rapidly worse, and he made several attempts to see a medical provider for treatment of his MRSA infection. Pelker and Eoavardi were supervising officers in Plaintiff's housing unit. Officer Hood, who saw and acknowledged Plaintiff's obvious need for medical treatment on April 15, asked Pelker to request medical attention for Plaintiff. However, Hood reported back to Plaintiff that Pelker refused to take any action. (Doc. 1, p. 23). On the next shift, Officer Eaton told his supervisor (Eoavardi) about Plaintiff's need for treatment, but Eoavardi took no action. Based on these allegations, Plaintiff's deliberate indifference claim against Pelker and Eoavardi in **Count 3** shall receive further consideration.

### Count 4 – Deliberate Indifference – Medical Providers

In the context of an inmate's need for medical care for a serious condition, "[d]elaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). While the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," it does require "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d

262, 267 (7th Cir. 1997). Further, a medical provider's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff alleges that his history of MRSA infection and recurring outbreaks was well-documented in his medical records. That chronic condition, and the obvious swelling, facial wound, and pain that Plaintiff developed on April 10, 2015, demonstrated that he had an objectively serious medical need. He states that he suffered significant pain and a drastic worsening of his symptoms while the medical-provider Defendants delayed his care.

Plaintiff had to wait for 2 days to see a nurse (Maciura) after sending a sick call request on April 10, 2015. When Maciura saw Plaintiff on April 12, she observed his condition but refused to give him any pain medication or antibiotic treatment, although she (or medical official John Doe #3) noted in Plaintiff's chart that antibiotics were prescribed for him. If Maciura did request an antibiotic prescription, then John Doe #2 (doctor) failed to provide that medication. Plaintiff claims that his April 14 and April 15 doctor's appointments/call passes were cancelled by John Doe #2 (doctor), and he received no medication during that time. Either Maciura or John Doe #3 falsely stated in Plaintiff's medical chart that he skipped a doctor's appointment and went to yard instead; he claims this action further delayed his treatment. Plaintiff blames Dr. Trost, the medical director at Menard, for allowing or causing Plaintiff's treatment to be delayed,

16

despite his awareness of Plaintiff's chronic MRSA condition.

At this early stage of the litigation, it cannot be determined whether the delays and failure to treat Plaintiff's MRSA flare-up were due to deliberate indifference on the part of these medical Defendants, or resulted from negligence or malpractice. Accordingly, the Eighth Amendment claim in **Count 4** against Maciura, Trost, John Doe #2 (doctor), and John Doe #3 (medical official) shall proceed for further factual development.

### Dismissal of Count 5 – Grievances

Plaintiff seeks to impose liability on several Defendants who received his June 9, 2015, grievance complaining about the delays and denial of medical care for his MRSA infection. (Doc. 1, pp. 26-30). He claims that Heath Care Administrator Walls responded on or about June 10, 2015, to the grievance, repeating the false information that Plaintiff caused delay by skipping a medical appointment to go to the yard. Plaintiff appealed the denial of his grievance(s) to Oakley (Grievance Officer), Butler (Warden), Baldwin (IDOC Director), and McCarty (Administrative Review Board). Those individuals did not investigate the matter, and/or agreed with the denial of Plaintiff's grievance.

It is well established that the mishandling, denial, or failure to respond to grievances does not implicate any constitutional right. Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's ability to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. §

1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Nonetheless, a defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Notably, Plaintiff does not allege that Walls, Butler, McCarty, Oakley, or Baldwin were involved personally in any of the misconduct that gave rise to his grievance. Instead, Plaintiff complained to them about his medical care only after the fact, too late for them to have intervened to correct the delays or denial of treatment. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430.

For these reasons, **Count 5** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. Walls, Butler, McCarty, Oakley, and Baldwin shall be dismissed from the action without prejudice.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with his claims in Counts 2 and 4 against John Doe Defendants #1 (Commissary Officer), #2 (doctor), and #3 (medical official). However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of John Doe Defendants #1, #2, and #3 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Disposition

**COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **MONJE, BUTLER, McCARTY, WALLS, OAKLEY,** and **BALDWIN** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **BRACE, EOAVALDI, MORRIS, WELBORN, DUNBAR, HARRIS, MACIURA, PELKER,** and **TROST**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail

these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE #1 (Commissary Officer), JOHN DOE #2 (doctor),** or **JOHN DOE #3 (medical official)** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.10.23 14:20:52 -05'00'

**United States District Judge**