THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHUNG MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CV-943-NJR-RJD |
| | ) | |
| MACIURA and JOHN TROST,[1] | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Reona J. Daly (Doc. 58), which recommends granting the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 47), filed by Defendant Dr. Trost. For the following reasons, the Court adopts the Report and Recommendation in its entirety and grants Dr. Trost's Motion for Summary Judgment.

## BACKGROUND

Plaintiff Shung Moore filed this *pro se* civil rights action on September 1, 2017, pursuant to 42 U.S.C. § 1983 (Doc. 1). Moore alleges his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard") (*Id.*). According to the Complaint, Moore attempted to file a grievance against Defendant Brace, a correctional officer at Menard, for using excessive force against him during an incident

---

[1] The Clerk of Court is **DIRECTED** to correct Defendant Maciura's name to Augusta Williams (*see* Doc. 33).

that occurred on April 7, 2015 (*Id.*). Brace and other Defendants retaliated against Moore by verbally mocking him, causing his clothing and bedding to disappear, and refusing to provide him with adequate hygiene products and other necessities (*Id.*). During this period, Moore was suffering from a Methicillin Resistant Streptococcus ("MRSA") infection, and he was eventually quarantined (*Id.*). Defendants continued to deny Moore access to new clothing, hygiene products, and cleaning supplies to disinfect his cell, which aggravated his infection (*Id.*). Moore experienced swelling, sores, and extreme pain on the left side of his face (*Id.*). He requested medical attention and was seen by Nurse Maciura on April 12, 2015, but was denied pain medication and antibacterial ointment (*Id.*). Moore eventually saw Dr. Trost on April 16, 2015, and learned someone had indicated in his medical records that he refused to attend a doctor's appointment and was already prescribed antibacterial ointment (*Id.*).

Following a threshold review of Moore's Complaint pursuant to 28 U.S.C. § 1915A, Moore was permitted to proceed on the following Counts:

**Count 1 –** First Amendment retaliation claim against Brace, for causing Moore's clothing and bedding to be lost or destroyed on or about April 7, 2015, after Moore filed a grievance against Brace for excessive force;

**Count 2 –** Eighth Amendment deliberate indifference claim against Eoavaldi, Morris, Welborn, Dunbar, Harris, and John Doe #1 (Commissary Officer) for subjecting Moore to unsanitary conditions of confinement, by refusing or failing to replace Moore's clothing and bedding, refusing to give Moore disinfectant to clean his quarantine cell, and failing to provide Moore with personal hygiene supplies or permit him to purchase them;

**Count 3 –** Eighth Amendment deliberate indifference claim against Pelker and Eoavaldi for failing to summon medical care for Moore on April 14-15, 2015, despite being informed of Moore's severe and painful swelling; and

**Count 4 –** Eighth Amendment deliberate indifference claim against Trost, Maciura, John Doe #2 (Doctor), and John Doe #3 (Medical Official) for delaying and denying treatment for Moore's painful facial MRSA infection between April 10-15, 2015.

On June 11, 2018, the Court dismissed Counts 1, 2, and 3 as time-barred (Doc. 39). All of the John Doe Defendants have been dismissed (*see* Docs. 39, 83). On August 16, 2018, Dr. Trost moved for summary judgment, arguing Moore failed to exhaust his administrative remedies prior to filing this suit (Doc. 47). Specifically, Dr. Trost asserts Moore did not name him in any grievance that was fully appealed (*Id.*).

### RELEVANT GRIEVANCES

The record contains three relevant grievances, dated June 9, 2015; June 14, 2015; and July 12, 2015. Moore's grievance from June 9, 2015 states that on April 10, 2015, he submitted a sick call request for treatment of his chronic MRSA condition (Doc. 48, Ex. 1, p. 17). On April 11, Moore yelled out for Nurse Maciura to "stop" when she walked by his cell with a correctional officer, but she left the gallery without addressing Moore's call (*Id.*). The correctional officer returned and asked Moore what he wanted from Nurse Maciura (*Id.*). Moore told the officer he needed treatment for his MRSA symptoms (*Id.*). The officer left and later returned with a message from Nurse Maciura that Moore was scheduled for an appointment the next day (*Id.*).

On April 12, Moore saw Nurse Maciura and showed her his swollen face and MRSA-related bumps on his neck (*Id.*). He reported experiencing pain and increased outbreaks (*Id.*). Nurse Maciura stated, "It doesn't look like MRSA to me" (*Id.*). Moore requested antibiotics, pain medication, and antibacterial ointment, but Nurse Maciura told Moore, "When you see the doctor you can ask him for all of that. I'm just looking you over" (*Id.*). Moore returned to his cell without medication (*Id.*). Throughout the following three days, Moore's condition rapidly deteriorated and he could barely talk, eat, or wash his face without extreme pain (*Id.*). Moore asked guards for medical treatment and eventually saw two other nurses on April 15 (*Id.*). One of the nurses asked Moore why he was not taking his antibiotics and Moore explained he was not prescribed antibiotics (*Id.*). The nurse told Moore that Nurse Maciura wrote in his medical chart that he received antibiotic medication and refused to attend a doctor's appointment (*Id.*). Moore states in the grievance that Nurse Maciura failed to provide Moore adequate medication, alleviate his pain and suffering, and timely contact a doctor; was deliberately indifferent to Moore's serious medical needs; and falsified two entries in Moore's medical chart (*Id.* at p. 16).

In response to Moore's grievance, the Health Care Unit Administrator sent Moore a letter stating,

> You have a concern of Nurse Maciura not taking care of your medical needs. She saw you on nurse sick call. She spoke with the doctor and got an order for antibiotics. Those antibiotics were signed out of stock for you. On 4/13/2015, the next day, you were to be seen by the doctor. You went to yard instead. Please keep all scheduled appointment. Your issue was addressed

(*Id.* at p. 14).

On June 15, 2015, Moore replied to the letter, contesting its conclusions and denying he skipped his doctor's appointment (*Id.* at pp. 18-19). Moore also alleged Nurse Maciura falsified entries in his medical chart (*Id.*). Based on the letter from the Health Care Unit, the grievance office denied Moore's grievance as moot (*Id.* at p. 13). Moore appealed the denial to the Administrative Review Board ("ARB"), who also denied the grievance because Menard appropriately addressed the issue (*Id.*).

On June 14, 2015, Moore filed a grievance directly with the ARB, stating that he submitted a sick call request on April 10, 2015 for treatment of his MRSA (Doc. 48, Ex. 3, p. 21). Most of the grievance is illegible, but it indicates that on April 12, 2015, Moore was seen by Nurse Maciura and was unsatisfied with her care (*Id.*). Moore states that due to the deliberate indifference of Nurse Maciura and "other prison officials," his MRSA went untreated for four days (*Id.*). On September 2, 2015, the ARB denied the grievance for bring submitted without a response from the facility and filed outside the timeframe (*Id.* at p. 13).

On July 12, 2015, Moore filed another grievance directly with the ARB (Doc. 48, Ex. 1, pp. 38-39). Although the grievance is also largely illegible, it appears Moore alleged Officer Brace and other correctional officers were deliberately indifferent to his need for basic necessities (*Id.*). The grievance does not mention Dr. Trost or allege Moore received inadequate medical care from a physician (*Id.*). The ARB denied the grievance for being submitted with a response from the facility and outside the timeframe (*Id.* at p. 40).

In addition to these grievances, Moore sent a letter directly to the ARB on September 3, 2015 (*Id.* at p. 10). He complains of "medical staff and (their) [sic] management of my chronic skin condition overall" (*Id.* at p. 11).

## THE REPORT AND RECOMMENDATION

Magistrate Judge Daly determined an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was unnecessary (Doc. 58). On October 30, 2018, she issued a Report and Recommendation suggesting the Court grant Dr. Trost's summary judgment motion (*Id.*).

Judge Daly concluded Moore failed to exhaust his administrative remedies as to Dr. Trost, because no grievance mentions Dr. Trost or attempts to describe Dr. Trost's allegedly improper conduct (Doc. 58). Judge Daly also found that although the June 9, 2015 grievance uses the word "doctor" on a few occasions, the grievance was not sufficient to put Menard on notice of Moore's complaints about Dr. Trost (*Id.*). Also, Judge Daly concluded the other grievances were improperly submitted directly to the ARB, so they were insufficient to exhaust Moore's remedies (*Id.*). Moore filed a timely objection to the Report and Recommendation[2] (Doc. 86).

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR

---

[2] Defendants argue the objection was untimely, as it was due February 7, 2019, but was not filed until February 11, 2019. The Certificate of Service states it was submitted via institutional mail on February 7, 2019, and Moore is entitled to the benefit of the prison mailbox rule.

73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A. **Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

**B.     Illinois Exhaustion Requirements**

As an inmate in the Illinois Department of Corrections ("IDOC"), Moore was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. 20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN.

CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's ("CAO" or "warden") response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the CAO, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the ARB within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly

to the CAO, who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

Moore raises several objections to Judge Daly's Report and Recommendation (Doc. 86). Moore primarily argues the June 9, 2015 grievance was sufficient to exhaust his administrative remedies against Dr. Trost because he mentions the word "doctor" throughout the grievance. Moore emphasizes that inmates are not required to identify individuals by name in grievances.

Illinois regulations require a grievance to contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE § 504.810. If the inmate does not know an individual's identity, he must "include as much descriptive information about the individual as possible." *Id.*

Accordingly, a grievance is not fatally flawed just because the inmate does not identify the alleged wrongdoer by name. "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Moore correctly asserts that his grievance from June 9, 2015 is not insufficient just because it does not specifically refer to Dr. Trost by name. But the grievance is still insufficient because Moore does not attempt to describe Dr. Trost's conduct or even allege general complaints about inadequate care he received from a doctor. Although Moore mentions the word "doctor" in his grievance, he is clearly grieving the conduct of Nurse Maciura and not a doctor. Moore states, "Nurse Maciura . . . wait[e]d unnecessarily long before calling the prison doctor" and "she refused to call the doctor" (Doc. 48, Ex. 1, p. 17). Even when construing the grievance in a light most favorable to Moore's position, the grievance does not indicate Moore received inadequate healthcare from a doctor.

A grievance serves the function of alerting the state to a problem and inviting corrective action. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Moore's grievance from June 9, 2015 falls short of this standard and was insufficient to exhaust his administrative remedies as to Dr. Trost.

Moore also argues Judge Daly impermissibly decided disputed facts and made credibility assessments when she concluded Moore improperly submitted his June 14, 2015 and July 12, 2015 grievances to the ARB without first submitting them to Menard. Moore, for the first time in his objection to the Report and Recommendation, asserts he submitted the June 14, 2015 and July 12, 2015 grievances to the grievance office at Menard

before submitting them to the ARB, but never received a response from the facility. Moore argues that whether he actually sent the grievances to Menard raises disputed facts and that Judge Daly erroneously made credibility determinations when she assessed the issue in her Report and Recommendation.

"Arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district judge are waived." *Zendejas v. Reel Cleaning Servs., Inc.*, Case No. 05 C 6933, 2009 WL 2431299, at *8 (N.D. Ill. Aug. 6, 2009). In his Motion for Summary Judgment, Dr. Trost points out that an inmate must first submit grievances to the correctional facility in order to properly exhaust administrative remedies (Doc. 48, p. 4). The June 14, 2015 and July 12, 2015 grievances are attached to the motion and plainly state the ARB denied the grievances for not containing a facility response (Doc. 48, Ex. 3, p. 21; Doc. 48, Ex. 1, pp. 38-39). Until now, Moore never asserted he filed the grievances with Menard before sending them to the ARB. Accordingly, his argument is waived. There was no disputed fact or credibility issue before Judge Daly.

## Conclusion

For these reasons, the Court **ADOPTS** Magistrate Judge Daly's Report and Recommendation (Doc. 58). The Motion for Summary Judgment filed by Dr. Trost is **GRANTED** (Doc. 47). Dr. Trost is **DISMISSED without prejudice**; the Clerk of Court is **DIRECTED** to enter judgment in his favor at the close of this entire action.

In light of the Court's rulings to date, the following claim remains in this action:

Count 4 - Eighth Amendment deliberate indifference claim against Defendant Augusta Williams (f/k/a Maciura) for delaying and denying treatment for Moore's painful facial MRSA infection between April 10-15, 2015.

IT IS SO ORDERED.

DATED: March 31, 2019

NANCY J. ROSENSTENGEL
United States District Judge